Argued at Pendleton May 5, affirmed June 3, rehearing denied July 8, 1924.

## IVY TYLER *v.* T. H. MOORE AND THEODORE MOORE.

### (226 Pac. 443.)

**Appeal and Error—Appellate Court cannot Weigh Evidence if Verdict Supported by Substantial Evidence.**

1. The appellate court cannot weigh evidence where there is any substantial evidence to justify the verdict.

**Appeal and Error—Appellate Court must Assume Correctness of Jury's Findings of Fact on Conflicting Testimony.**

2. Plaintiff having prevailed upon conflicting testimony, the appellate court must assume the correctness of jury's findings of fact.

**Municipal Corporations—Evidence Held to Show Negligence of Automobile Driver.**

3. In action for injuries caused by automobile, evidence *held* to show negligence of driver as well as plaintiff's lack of contributory negligence.

**Witnesses—Largely Discretionary With Trial Court to Permit Leading Questions.**

4. It is largely a matter of discretion of the trial court to permit leading questions.

**Appeal and Error—Witness' Conclusion Held not Harmful.**

5. Witness' conclusion that automobile driver would have had plenty of room to avoid pedestrian if he had proceeded straight ahead instead of swerving as he did *held* not harmful where the physical facts themselves so indicated.

———————

4. Permitting leading questions as a matter within the discretion of the court, see note in 17 Ann. Cas. 840.

Appeal and Error—Defendant Held not Entitled to Complain of Testimony Disclosing Nationality of His Servant Already Shown Without Objection.

6. If, in action for injuries from being struck by car driven by defendant's servant, it was harmful to permit defendant, in response to plaintiff's questions, to testify as to nationality of the driver, defendant could not complain where without objection plaintiff's witnesses had already testified incidentally to such nationality.

Evidence—Identifying Negligent Driver by Nationality Proper.

7. It was germane to the case to identify defendant's servant driving the car which struck plaintiff, and, the driver not being called or present as a witness, it was not out of place to identify him by his nationality.

Appeal and Error—Objectionable Argument must be Objected to and Ruling Obtained from Trial Court.

8. If plaintiff indulged in objectionable argument to the jury, defendant should have objected to it and obtained a ruling thereon from the trial court in order to present the alleged error on appeal.

Evidence—Witness' Testimony That Plaintiff was not Able to Do Household Duties Held Statement of Fact.

9. Where in personal injury action it was shown witness had attended plaintiff during latter's injury, her testimony that plaintiff was not presently capable of performing regular household work *held* not purely a conclusion, but a statement of fact.

Witnesses—Answer Held Unresponsive.

10. Where witness who attended plaintiff during her injury was asked whether witness knew whether plaintiff was presently capable of performing regular household duties, her reply, "She is not," was unresponsive, and might have been stricken on that ground.

Evidence—Exclusion of Witness' Answer on Theory It was Conclusion Held not Reversible Error.

11. In action for injuries to pedestrian struck by an auto, exclusion on ground it called for a conclusion of question whether, in witness' judgment, it was possible after plaintiff stepped off the curb for defendant's driver to have avoided the accident, *held* not reversible error.

Master and Servant—Master Liable for Act of Servant in Furtherance of Business.

12. A master is liable for the act of his servant in performing a service in furtherance of the master's business, whether or not the act was done in exact observance of detail prescribed.

From Malheur: DALTON BIGGS, Judge.

In Banc.

This is an action for damages which, it is alleged, resulted from plaintiff being run over, or struck, by

an automobile driven by a servant or agent of the
defendants. It is alleged that this accident occurred
at the intersection of Nevada Avenue and Oregon
Street, in the town of Ontario, Oregon, and the par-
ticular facts, as alleged, are substantially: That on
the twenty-first day of May, 1921, the plaintiff, while
lawfully using the public street as a pedestrian and
while crossing from the north side of Nevada Avenue
to the south side, at its intersection with Oregon
Street, on the easterly side of Oregon Street and
directly across Nevada Avenue, from one side-
walk to the other, was run down and injured by
the servant of defendants, in an automobile then
owned by defendants, which was being driven on the
public highway and in the possession of one of de-
fendants' servants; that the servant of defendants
was known to be a foreigner, with little or no ex-
perience as a driver, and was engaged in the course
of defendants' business in driving an automobile from
the hotel owned by defendants to the railroad sta-
tion; that while so driving this automobile he came
towards the intersection just mentioned, of Nevada
Avenue and Oregon Street, with the intention of turn-
ing at the intersection and proceeding north on Ore-
gon Street, and that instead of turning at the curb on
the right side, or instead of turning to the left of
plaintiff, who was in plain view of him, about twelve
feet from the curb, he wrongfully, unlawfully, negli-
gently, and carelessly came down Nevada Avenue,
near its intersection with Oregon Street, turning the
car in a direct line toward plaintiff, and unlawfully,
carelessly, and negligently ran the said automobile at
a dangerously high rate of speed, very much in excess
of fifteen miles per hour, contrary to the ordinance
of the city in such cases provided, and carelessly and

negligently failed to slacken his speed to fifteen miles per hour, and failed to sound a bell, gong, horn or whistle, thus notifying plaintiff of his sudden approach, and the plaintiff being in plain view, the servant in possession of said car either saw plaintiff, or could have seen her with the exercise of reasonable care; that he carelessly neglected to keep a lookout in front of him and carelessly failed to slacken the speed of the automobile, and, if he saw plaintiff in front of him, continued to run said automobile carelessly and negligently directly towards the plaintiff, although plaintiff was in plain sight; that by reason of said carelessness and negligence the defendants' servant violently struck the plaintiff with said automobile, injuring her body and head, and otherwise injuring her, all of which injuries are particularly set forth in the complaint.

Defendants filed separate answers, which denied most of the material allegations of the complaint. It was alleged that at the time that plaintiff was struck by the automobile mentioned in the complaint the automobile was on the proper and lawful side of the street and was being operated at a lawful rate of speed and in a lawful manner; that the plaintiff was struck by the automobile by reason of her carelessness and negligence; that the plaintiff, suddenly, without warning, when the automobile was near the crossing, stepped out in the street in front of it; that after she left the curb it was impossible to stop the automobile or keep from striking her, and that the acts mentioned in the complaint were due entirely to the carelessness and negligence of plaintiff. The answer of Theodore Moore denied the ownership of the automobile mentioned in the complaint.

There was a reply to this new matter, denying the same, and the case proceeded to trial. There was a verdict for plaintiff against the defendant T. H. Moore for the sum of $2,000, and a verdict in favor of the defendant Theodore Moore. Defendant T. H. Moore appeals to this court, alleging as error certain admissions and rejections of testimony, and also errors of the court in its instructions, all of which will be discussed hereinafter.

AFFIRMED.     REHEARING DENIED.

For appellant there was a brief and oral argument by *Mr. Ed. R. Coulter.*

For respondent there was a brief over the names of *Mr. R. W. Swagler* and *Messrs. Green & Hess,* with an oral argument by *Mr. Swagler.*

McBRIDE, C. J.—1–3. Much of appellant's brief is taken up with a discussion and comparison of the evidence in this case, and it must be said that the evidence is somewhat conflicting, but perhaps the discrepancies may be referred to the fact that nearly two years had elapsed between the happening of the accident and the date of the trial. We are not permitted to enter into a discussion as to the weight of evidence where there is any substantial evidence to justify the verdict. In this case, the plaintiff having prevailed, and the jury having seen fit to accept the testimony adduced by her as the true condition, the law requires us to assume that the jury was correct in that judgment. Therefore, taking plaintiff's testimony as true, as we must, it appears that some two months before the accident the defendant T. H. Moore employed the servant in question to act as porter, part of his duties being to carry baggage

of customers between the hotel managed by T. H.
Moore and the railroad station, several blocks away.
At the date of the accident the servant in question,
who was a foreigner, probably a Korean, not having
had any great experience in handling automobiles,
was driving a light Ford truck from the railroad
depot to the hotel of T. H. Moore, in the town of On-
tario. In so driving his route was to come west along
Nevada Avenue to the intersection of Nevada Avenue
and Oregon Street and then to turn to the right at
such intersection, going north two blocks or so to the
hotel. It also appears from the testimony that what
instruction he had in the use and management of the
automobile was received from T. H. Moore, and that
Moore must have had some knowledge of the extent
of his experience, or inexperience, in handling a car.
From plaintiff's testimony it appears that she was
going south on the east side of Oregon Street and
that she had stepped off the northeast corner of the
intersection of Oregon Street with Nevada Avenue
and had proceeded something like ten or twelve feet
along the line of the east intersection of the two streets
when she observed the defendant's servant driving
the automobile at a rate of speed variously estimated
by plaintiff's witnesses of from seventeen to twenty-
five miles an hour, coming west on Nevada Avenue
and somewhere near the center line of the street,
probably a little to the right of the center line, look-
ing west; the distance between the curb and the center
line of Nevada Avenue being twenty-six feet. Ac-
cording to plaintiff's witnesses, seeing the car being
driven along in that direction, she turned to retreat
to the sidewalk, but before she could reach the walk,
and when at a distance of eight or ten feet therefrom,
the driver swerved his car directly to the right, strik-

ing her and inflicting the injuries mentioned in the complaint, and which the testimony indicates were quite severe. This testimony was contradicted by some of defendant's witnesses, who claim that plaintiff stepped off the sidewalk when the automobile was not more than ten or twelve feet away from her, and walked directly in front of it, in such a position that it was impossible in that distance for the automobile to have avoided doing her the injury that occurred, but, as before stated, the jury evidently was disposed to accept the testimony of plaintiff's witnesses, and this testimony, if true, abundantly established the negligence and carelessness of the driver, as well as the lack of contributory negligence on the part of plaintiff.

4. The objections to the testimony are numerous, many of them on the technical ground that questions propounded to plaintiff's witnesses were leading, which is so largely a matter of discretion of the court that we do not attach much importance to them on that ground.

5. In particular, the witness Miss Frazier, who was somewhere near the northeast corner of the curb on Oregon Street when the accident occurred, detailed at length the circumstances of the accident and was asked the following question, which was objected to as calling for a conclusion of the witness:

"I will ask you, Miss Frazier, if when you saw the automobile first, and from the position where Mrs. Tyler had stepped off from the sidewalk, if there was plenty of space between the center post and Mrs. Tyler to have turned around her?"

This was objected to as calling for a conclusion of the witness, and the objection was overruled and the witness answered:

"Well, the way he was coming, it seemed as though if he had gone straight he would have had plenty of room to have avoided her by going on the other side of her, between her and the center post."

The question was directly leading, but was not objected to on that ground but on the ground that it called for a conclusion of the witness. It called partly for a conclusion and partly for a statement of fact, but all the testimony indicated that there was plenty of space for the driver to have kept to plaintiff's left, even if she had been the full twelve feet from the curb. The street was admittedly fifty-two feet wide from curb to curb. Therefore, from the curb to the middle of the street would have been twenty-six feet, and allowing plaintiff to have been the extreme distance of twelve feet, the physical facts themselves indicate that there was a space of fourteen feet between the point she had reached in crossing the street to the center thereof—ample room for the driver to have kept to her left and avoided the accident. Even conceding, for the purposes of the argument, that the statement of the witness was more or less a conclusion, we fail to see how it could have been harmful.

6-8. Another objection was made to an inquiry put to T. H. Moore as to the nationality of the driver of the car. He was asked if he knew the name of the driver, and he answered that he did. He was then asked what nationality the driver was and, over objection, he answered, "Supposed to be a Korean." He was then asked if he had any other Japanese or Korean driving the car for a period of a month or two preceding the accident, and he answered that he did not remember having any. The objection to these questions was that the statement of the nationality

of the driver would tend to prejudice the jury, owing to the prevalent prejudice against the employment of Asiatics. Two witnesses had previously testified for plaintiff who had stated, incidentally, that the driver was a Japanese or a Korean, and no objection had been made to such testimony, so if it was harmful in any way, the harm had already been done before these questions were asked. It was germane to the case to identify the person driving the car, and the driver not being called or present as a witness, it was not out of place to identify him by his nationality. It was stated in the argument that this was used by counsel for plaintiff during his argument to the jury in a manner calculated to arouse the prejudice of the jury against the defendant on account of the nationality of his servant, but this does not appear in the bill of exceptions or the transcript, and if an argument of that kind was being used, an objection should have been made to that course of argument and a ruling of the court obtained thereon.

9, 10. Another objection is that Mrs. Hess, the mother of plaintiff, was placed upon the stand and asked this question, "Do you know of your own knowledge now whether she is able to perform regular household work?" The answer was, "She is not." The question was asked after it had been shown by the witness' testimony that she had waited upon her daughter during her injury. We do not think this was purely a conclusion of the witness, but a statement of a fact. The answer was not responsive to the question and could have been stricken out on that ground, but no such motion was made. It was a question which should have been answered by "Yes" or "No." There is little dispute in fact as to the seriousness of plaintiff's injuries.

11. Another assignment of error relates to the ruling of the court sustaining an objection to the following question asked when the witness Taylor was on stand:

"State whether or not in your judgment it was possible after the time she stepped off of the curbing for the driver of that car to have avoided that accident?"

It was objected to, among other grounds, as leading, suggestive and calling for a conclusion of the witness, and the objection was sustained by the court on the last ground. The witness had stated all of the conditions before and his testimony would have been merely a conclusion drawn from these conditions and could have added nothing to the force of his testimony; and, besides this, it was asked him to determine the very fact that the jury was there to try, namely, whether it was possible for the defendant's servant to have stopped the car and avoided the accident. Perhaps it would have been as well if the court had admitted it, but we do not think that the ruling to the contrary constitutes reversible error. It certainly would not have been reversible error if it had been admitted.

12. The most serious question in this case arises upon the testimony of Mr. T. H. Moore that two weeks before the accident he had told the porter not to use the car any longer, as his son needed it for use out at his orchard, and had furnished the servant with a hand-car to wheel the baggage in place of the automobile. It was admitted that for several weeks previous to this alleged direction the porter had used the car and, in fact, had been instructed to some extent in its use by the defendant. It does not appear that the car was taken away from him for any

other reason that the required use of it by the defendant's son in connection with the orchard. It appears from defendant's testimony that on the day in question the son had come in from the orchard with the car and had left it in front of the hotel, from which place it was taken by the porter and used in the transaction of his employer's business of conveying baggage to and from the depot, and without defendant's knowledge. The theory of the defendant in this case is that this prohibition to use the car, which we assume for the purposes of this discussion to be established, exonerates the defendant from any liability resulting from its use by the servant in the face of the direction that it should not be used. The porter was acting within the general scope of his authority, which was to carry baggage from the hotel to the depot, and *vice versa.* We take it that the true test of whether a master is liable for the act of his servant is whether the servant at the time of the commission of the injury was performing a service for the master in furtherance of the master's business, not whether it was done in exact observance of detail prescribed by his employer. In the case of *Healy* v. *Johnson,* 127 Iowa, 221, 226 (103 N. W. 92, 94), the Supreme Court of Iowa says:

" * * The doctrine of *respondeat superior* is not limited to the acts of the servant done with the express or implied authority of the master, but extends to all acts of the servant done in discharge of the business intrusted to him, even though done in violation of his instructions. See authorities collected in 20 Am. & Eng. Ency. of Law (2 ed.), 167."

To the same effect, see: *Houston* v. *Keats Auto Co.,* 85 Or. 125 (166 Pac. 531); *Adams* v. *Wiesendanger,* 27 Cal. App. 590 (150 Pac. 1016); *Barrett* v. *Minn. St.*

*P. & S. Ste. M. R. Co.*, 106 Minn. 51 (117 N. W. 1047, 18 L. R. A. (N. S.) 416); *Philadelphia W. & B. R. Co. v. Brannen* (Pa.), 2 Atl. 429; *Bennett* v. *Bush,* 75 N. J. Law, 240 (67 Atl. 188); *Ellinghouse* v. *Ajax Live Stock Co.,* 51 Mont. 275 (152 Pac. 481, L. R. A. 1916D, 836).

We have carefully examined the instructions objected to by counsel, as well as all of the instructions given in the case, and do not find any of them vulnerable to the objections urged, and, as applied to this case, they are approved. As the objections go to a very large number of the instructions, it is impracticable to discuss each one in detail, but on the whole, the case seems to have been fairly presented to the jury, and the verdict is not disproportionate to the injury shown to have been inflicted.

The judgment of the lower court is affirmed.

AFFIRMED.   REHEARING DENIED.