## State Bank of Waterloo, Appellee, v. Potosi Tie and Lumber Company, Appellant.

526

Opinion filed March 13, 1939.

BURR S. GOODMAN, of Waterloo, and GREEN, VERLIE & HOAGLAND, of Alton, for appellant; J. F. SCHLAFY, JR. and C. D. EASTMAN, both of Alton, of counsel.

HARRY E. JACKSON, of Waterloo, and P. K. JOHNSON, of Belleville, for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

For some time prior to 1933 plaintiff, a banking corporation was the owner and holder of a mortgage lien on land in Monroe county owned by L. J. Cahill. Plaintiff foreclosed its mortgage and received a master's deed which it filed for record in August, 1934. After plaintiff acquired its deed Cahill continued in possession as its tenant. Between October, 1936 and June, 1937 the defendant corporation, acting through its agent F. A. Reddick, assuming Cahill to be the owner of the land and having the legal right to sell the standing timber bought it from him and went upon the land and cut a large number of oak trees and made them into ties. Plaintiff instituted this suit to recover the statutory penalty for cutting trees on the lands of another without the owner's permission. Sec. 5, ch. 136, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 37.812]. The section relied upon provides a liability of $8 per tree for oak such as were involved in this case. The defendant answered the complaint and denied that it cut the trees and that it violated the statute. On a trial without a jury the plaintiff recovered a judgment for $2,080.

On this appeal no question is raised as to plaintiff's title to the land nor to the fact that defendant's agents cut the timber but it contends that the statute is penal

and that the evidence does not show that it knowingly and wilfully committed the wrong.

The section of the statute pleaded has been incorporated in the statutory law of this State for more than a century. In the early history of the State it was given frequent application and in the few cases that reached the Supreme Court it was construed as a penal statute the object of which was to punish the wrongdoer as well as to recompense the injured individual. *Cushing v. Dill,* 2 Scam. (3 Ill.) 460; *Whitecraft v. Vanderver,* 12 Ill. 235; *Watkins v. Gale,* 13 Ill. 152; *Gebhart* v. *Adams,* 23 Ill. 397; *Cushman v. Oliver,* 81 Ill. 444.

In *Cushing v. Dill, supra,* the court said, "This action is brought upon a penal statute, the object of which is to punish the wrong doer, as well as to recompense the injured individual. To subject any one, therefore, to the penalty of the act, it must be shown to have been wilfully violated, by proof that the party charged, committed the forbidden act himself, or caused another to do it by his command or authority. The statute gives the penalty against the actual trespasser only; it would be a violation of legal principles, therefore, to extend it so as to embrace another by implication."

In *Whitecraft v. Vanderver, supra,* it was said, "To subject a party to such punishment he must have committed the wrong knowingly and wilfully or under such circumstances as show him guilty of criminal negligence."

In *Cushman v. Oliver, supra,* the court referring to the *Cushing* case said, "It was said in *Cushing v. Dill, supra,* where this statute for the first time came up for construction, that to subject anyone to its penalties, it must be shown to have been wilfully violated, by proof that the party charged committed the forbidden act himself or caused another to do it by his command or authority."

The evidence shows that defendant, a Missouri corporation, had in its employ one F. A. Reddick, who was its territorial manager for several counties in this State, including Monroe, and that a part of his duties was to buy standing timber, cause it to be cut and made into ties. His employment for these duties was general, he selected the timber and made the purchase without special direction or authorization from the defendant. He used his judgment in the performance of these duties. He wrote checks on the defendant in payment for the timber. It does appear in the evidence that he had a specific direction from the defendant to always examine public records to ascertain the ownership of the timber before making a purchase.

The evidence further discloses that Reddick dealt with Cahill the tenant in possession of the property and made the purchase from Cahill and issued checks to him in payment. Cahill cashed one of the checks but the others he tendered to plaintiff which it declined to accept. Plaintiff had no knowledge of the transaction with Cahill and did not know of Reddick's entry into the premises until after the trees were all cut. It is not claimed that Cahill had any authority to act for the plaintiff.

Reddick admits he did not cause the records to be examined to ascertain the title but says he relied upon the fact that Cahill was in possession and had been for many years and also upon what Cahill said to him as to his right to sell the timber. There is a conflict in the evidence as to what Cahill said but taking as true the evidence most favorable to defendant, Reddick asked him if he had the right to sell the timber to which Cahill replied that he had owned the land for years and had the legal right to sell anything that was on there.

When Reddick was negotiating with Cahill for the purchase of the timber, plaintiff's deed showing its ownership of the land was a matter of public record and the duty rested upon Reddick to examine the rec-

ords and ascertain the ownership. *Clark v. Leavitt,* 335 Ill. 184. He was chargeable with notice of all matters affecting the chain of title which appeared of record. *Blake v. Blake,* 260 Ill. 70. A proper examination of the record would have disclosed plaintiff's interest in the timber but in utter disregard of the duty resting upon him he elected to rely upon Cahill's possession and what Cahill said to him.

Cahill's possession was, as far as notice to Reddick was concerned, only the equivalent of the recording of the instrument under which Cahill claimed the right to possession. Cahill's occupancy being that of a tenant his possession did not serve to give notice to Reddick of any rights other than that of a tenant, *Garlick v. Imgruet,* 340 Ill. 136, and as a tenant he had no right to sell or cut the standing timber. Nothing that Cahill said to Reddick as to his ownership of the land or his right to sell the timber would be binding upon plaintiff or operate to the prejudice of its rights in the timber. Statements of Cahill that he had the right to sell the timber even though made while he was in possession did not serve to increase his rights in the land from that of a tenant to a greater title with the power to sell the standing timber. There was nothing in the fact that Cahill was in possession and claimed to have the right to sell the standing timber that released Reddick from the duty of examining the records to determine the holder of the record title. Under the circumstances Reddick's trespasses into the premises and the felling of the trees was in utter disregard of plaintiff's rights and must be held to have been knowingly and wilfully committed.

The remaining question is whether the penalty imposed by statute for such an act when knowingly and wilfully committed by the agent of a corporation can be imposed upon the principal.

The Supreme Court has said that the section relied upon has a two-fold purpose viz., compensation to the one injured and punishment of the wrongdoers. That

which is imposed as a punishment is in effect a statutory provision for the allowance of punitive damages. Punitive damages and the penalty imposed by the statute possess the same basic principle in that both are penal and intended to deter others from the commission of like offenses.

To establish a liability under the statute or a liability in a civil action for punitive damages it must appear in each case that the wrong was knowingly and wilfully committed. The action is authorized by the statute, to be brought by the plaintiff and the amount recovered is payable to him. We cannot make any distinction between a civil action for punitive damages and an action to recover this statutory penalty.

It has been repeatedly held that corporations may be held liable for punitive damages where the wrong was committed by a servant while acting within the scope of his employment. 15 Am. Jur. 733, sec. 291; *Pullman Palace Car Co. v. Reed,* 75 Ill. 125; *Chicago City Ry. Co. v. McMahon,* 103 Ill. 485.

In this case Reddick was in the exercise of a corporate power, engaged in the performance of a duty delegated to him by the company, and in the performance of that duty he knowingly and wilfully committed the wrongful act to the injury of the plaintiff. He did not commit the wrongful act in the furtherance of his own interest but in the course of legitimate and authorized business of the company. It is true he violated the instruction of the defendant to examine the records but such violation was in his capacity as agent acting for his principal in matters he had been expressly authorized. We believe the liability of the defendant was established.

The judgment of the circuit court is correct and is affirmed.

*Judgment affirmed.*