Argued February 6, affirmed March 13, 1975

STROUD, *Respondent, v.* DENNY'S
RESTAURANT, INC., *Appellant.*
532 P2d 790

*Ralph C. Barker,* of Buss, Leichner, Lindstedt, Barker & Buono, Portland, argued the cause and filed briefs for appellant.

*Charles E. Hodges, Jr.,* Portland, argued the cause and filed a brief for respondent.

HOWELL, J.

This is an action by plaintiff for malicious prosecution. A jury returned a verdict for plaintiff for general and punitive damages, and defendant appeals. The only issue is whether the trial court erred in refusing to withdraw punitive damages from the jury's consideration.

Plaintiff, his wife, and two friends went to defendant's restaurant to have an early morning breakfast. Plaintiff ordered sausage, eggs, hash browns and toast. The menu indicated the toast contained melted butter. When plaintiff's breakfast arrived the toast did not have melted butter on it; instead a frozen or refrigerated patty of butter was placed on the toast. Plaintiff objected to the waitress, who took the toast back to the kitchen. When the toast was returned to plaintiff the butter was in the same condition.

The evidence is in dispute as to whether plaintiff ate part of the toast. In any event, when plaintiff paid for the breakfast he attempted to deduct 25 cents for the unsatisfactory toast. During the discussion

at the cash register the defendant's cook shouted from the kitchen that plaintiff had to pay for the toast. A male host for defendant advised plaintiff he would call the police if plaintiff did not pay. When the police arrived the officer refused to arrest plaintiff, so the defendant's cook performed a citizen's arrest and a citation was issued. It was stipulated that the charge was dismissed and the record expunged.

Plaintiff alleged that the defendant's cook was an employee of defendant at the time and that he was acting for and on behalf of defendant. The allegation was admitted in defendant's answer in which defendant also alleged that the arrest was based on probable cause. The jury returned a verdict of $1,600 general damages and $9,000 punitive damages. Defendant appeals only as to the award of punitive damages. We affirm.

Defendant contends that punitive damages should not have been allowed in this case because defendant corporation did not direct or ratify the arrest.

The liability of a corporation for punitive damages for the acts of one of its servants has been the subject of some controversy. *See* Prosser on Torts 12, § 2 (4th ed 1971); Morris, Punitive Damages in Personal Injury Cases, 21 Ohio St L J 216 (1960); Note, 70 Yale L J 1296 (1961). Oregon and a substantial minority of states have generally followed the view adopted by Section 217(C) of the Restatement of Agency (Second) (1958):

> "Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:
>
> "(a) the principal authorized the doing and the manner of the act, or

"(b) the agent was unfit and the principal was reckless in employing him, or

"(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

"(d) the principal or a managerial agent of the principal ratified or approved the act."

*See also* Restatement of Torts § 909 (1939); Hodel, The Doctrine of Exemplary Damages in Oregon, 44 Or L Rev 175, 233 (1965).

In applying the above rule, this court has made a distinction between the "menial" employee and an employee acting in a managerial capacity:

"* * * Whatever may be the rule in other jurisdictions, it seems to be settled here that a corporation is not liable in punitive damages for the wrongful act of its menial agent unless such act was authorized or ratified: [citations omitted]." *Pelton v. Gen. Motors Accept. Corp.*, 139 Or 198, 204-05, 7 P2d 263, 9 P2d 128 (1932).

Thus it has been held that a "credit man" who was in charge of certain credit accounts was not a menial employee and could subject a corporation to liability for punitive damages. *Pelton v. Gen. Motors Accept. Corp.*, supra. And in *Osborn v. Teague Chevrolet*, 254 Or 486, 459 P2d 988 (1969), the court held that the trial court correctly refused an instruction that the corporation could not be held liable for punitive damages unless the "president or other principal officers of the corporation authorized or ratified the acts of its servant":

"* * * We believe it was not error to refuse to give the instruction because the instruction was too restrictive. In effect, it would have told the jury that a principal officer of the corporation must have expressly authorized or ratified the conduct.

> Corporate responsibility has been adjudged in this state for punitive damages where the person authorizing or ratifying the conduct is of less consequence in the managerial hierarchy than a corporate officer. [Citations omitted]." 254 Or at 491.

*See also Paur v. Rose City Dodge,* 249 Or 385, 438 P2d 994 (1968).

The above rule, based upon the distinction between menial and managerial employees, has been subject to much criticism, particularly when applied in states such as Oregon where punitive damages are justified on the theory of deterrence.[1] As stated by *McCormick on Damages* 285, § 80 (1935):

> "* * * [I]f prevention be the purpose of exemplary damages against corporations, the threat and hence the prevention would seem to be lessened substantially by a rule which imposes upon the plaintiff the difficult task of showing wrongdoing by those 'higher up.' "

Distinctions based upon the position of the individual wrongdoer in the corporate hierarchy are criticized as ignoring the individual's true responsibilities within the corporation:

> "Declining to accept any distinction based on difference in rank, one court has said: 'The president of a railway corporation is no more or less its agent than a brakeman on one of its trains. His agency is broader, but it is not boundless, and a matter which lies beyond its limits is as thoroughly beyond his powers as any matter beyond the very much smaller circle of a brakesman's [sic] duties; and, e converso, a brakeman is as fully authorized

---

[1] "* * * It is only in those instances where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent, that the use of punitive damages is proper." Noe v. Kaiser Foundation Hosp., 248 Or 420, 425, 435 P2d 306, 27 ALR3d 1268 (1967).

to act for the company, within the range of his employment, as the president is within the limits of his office. It can no more be said that the corporation has impliedly authorized or sanctioned the wilful wrong of its president, in the accomplishment of some end within his authority, than that a similar wrong by a brakeman, to an authorized end, is the wrong of the corporate entity. There is just the same and no more reason, in our opinion, for inflicting punishment on the corporation for the wilful misconduct of the one as of the other, and such punishment is no more vicarious in the one case than in the other. That punishment may be imposed on corporations for the wilful or wanton misconduct, within the general scope of their duties, of their chief executive officers, is well established, and not questioned in this case. We feel that we stand upon the same principles, and are moved by the same considerations to the same conclusion, in respect of the wilfulness, wantonness, and the like of brakemen and flagmen, while acting within the scope of their employment, and to the accomplishment of the legitimate ends thereof.'" 10 Fletcher Cyc Corp (Perm Ed) 376-77, § 4907 (1970), quoting *Mobile & O. R. Co. v. Seales,* 100 Ala 368, 13 So 917 (1893).

A majority of courts have adopted the rule that, if the servant has committed a tort within the scope of his employment so as to render the corporation liable for compensatory damages, and if the servant's act is such as to render him liable for punitive damages, then the corporation is likewise liable for punitive damages.[2] *See* McCormick on Damages,

---

[2] "The majority of the courts, however, have held that the vicarious liability of the master for acts within the scope of the employment extends to punitive as well as compensatory damages, *even in the absence of approval or ratification,* and that this is true especially in the case of corporations, who can only act through their agents. They have been concerned pri-

supra. *See also Northrup v. Miles Homes Inc. of Iowa,* — Iowa ——, 204 NW2d 850 (1973); *Goddard v. Grand Trunk Ry. of Canada,* 57 Me 202 (1869); *Sandifer Oil Co. v. Dew,* 220 Miss 609, 71 So 2d 752 (1954); *Western Coach Corporation v. Vaughn,* 9 Ariz App 336, 452 P2d 117 (1969); *State Bank of Waterloo v. Potosi Tie & Lumber Co.,* 299 Ill App 524, 20 NE2d 893 (1939).

As stated in 10 Fletcher Cyc Corp (Perm Ed) 372, § 4906 (1970):

> "But the better rule and the one supported by the weight of authority is that a corporation is liable for exemplary damages if the acts of its subordinate agents and servants were committed wantonly, wilfully or maliciously, though not authorized or directed by the company or ratified by it after their commission. That is to say, since a corporation may, in contemplation of law, be actuated by malice, etc., the state of mind as well as the conduct of its officers and agents being imputable to it, it follows that a corporation may, in a proper case, be held liable, like a natural person, for exemplary damages, and there are cases in which the wantonness or malice of subordinate agents and servants of a corporation in the course of their employment has been imputed to the corporation, although it was not authorized or ratified by the managing officers of the corporation, and although it did not appear that there was any negligence or misconduct on their part in employing or retaining the agent or servant. This is the only rule compatible with public policy and safety. * * *" (Footnotes omitted.)

marily with the deterrent effect of the award of exemplary damages, and have said often enough that if such damages will encourage employers to exercise closer control over their servants for the prevention of outrageous torts, that is sufficient ground for awarding them." (Emphasis added, footnotes omitted.) Prosser on Torts 12, § 2 (4th ed 1971).

Under this test, when an employee commits a wrongful act which would subject him personally to punitive damages, the essential inquiry must be whether the act was committed while the employee was acting within the scope of his employment, that is:

"whether the servant at the time of the commission of the injury was performing a service for the master in furtherance of the master's business, not whether it was done in exact observance of detail prescribed by his employer." *Tyler v. Moore et al.,* 111 Or 499, 509, 226 P 443 (1924).

If the employee was acting within the scope of his employment, the corporation will be liable for punitive damages regardless of whether that employee may be classified as "menial."[3]

■ We feel that this rule represents the better view with regard to the liability of a corporation for punitive damages, and is the only rule compatible with this court's prior statements that punitive damages are justified as a deterrent to prevent the violation of societal interests. *Starkweather v. Shaffer,* 262 Or 198, 497 P2d 358 (1972); *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 435 P2d 306, 27 ALR3d 1268 (1967).

■ In the instant case, as noted above, the defendant admitted that its cook "was an employee and acting for and on behalf of the defendant." There was also evidence that the cook had been directed to perform a citizen's arrest in such situations. The de-

---

[3] Under the circumstances in the instant case, we do not believe that defendant's cook can be classified as a "menial servant" whose acts, under the prior rule, required authorization or ratification. There was no manager present in the restaurant, and the male host had no supervisory authority. It was a question of fact whether the cook was the person in charge at the time of the incident. The trial court properly submitted this question to the jury, and the jury obviously resolved the issue against the defendant.

fendant does not appeal the award of compensatory damages. There was no error in submitting the question of punitive damages to the jury.

Affirmed.