The ALASKAN VILLAGE,
INC., Appellant,

v.

Mary SMALLEY, for and on Behalf of
Monica SMALLEY, an
infant, Appellee.

No. S–928.

Supreme Court of Alaska.

June 13, 1986.

Rehearing Denied July 11, 1986.

Paul W. Waggoner, Paul W. Waggoner, Inc., Anchorage, for appellant.

L. Ames Luce, Jeri D. Byers, Law Offices of L. Ames Luce, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

The primary issue in this appeal is the extent of a mobile home park owner's duty to protect others from injury from a tenant's dogs. The jury returned a verdict for Monica Smalley, who was injured by a tenant's dogs, holding the park owner liable for compensatory and punitive damages. The park owner appeals, claiming that it owed no duty of care to Smalley and challenging the damage award and several evidentiary rulings. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Monica Smalley, a six-year-old child, and Henry Scepurek were neighboring tenants of The Alaskan Village, Inc. (Village), an Anchorage trailer park. Scepurek's rental agreement with Village includes a comprehensive set of rules and regulations. Paragraph 1 of these rules states that the tenancy is terminable on thirty-days notice. Paragraph 4 prohibits the tenant from keeping vicious dogs or more than one dog. Paragraph 23 states that a renter's failure to obey the rules is grounds to cancel the rental agreement.

When Scepurek moved in, he obtained a pet permit from Village allowing him to keep two chihuahuas. In the permit, Scepurek promised to remove the pets from the premises immediately upon notice that they annoyed other tenants.

At some point, subsequent to obtaining the permit, Scepurek acquired two Staffordshire terriers, commonly called pit bulls. On June 12, 1983, these dogs climbed out of their pen in Scepurek's yard, pulled Smalley from a swing set, and mauled her. She was severely bitten on her face, neck and arm.

Smalley sued Village for compensatory and punitive damages for their negligence.[1] Following trial, the jury returned a special verdict finding that Village's negligence was a proximate cause of Smalley's injury and that Smalley suffered $235,000 in compensatory damages. The jury also found that Village was guilty of reckless indifference to the safety of others and assessed $550,000 punitive damages. Judge Milton M. Souter entered final judgment against Village according to the special verdict. The court later amended its judgment due to errors in the original judgment.[2]

Village appeals, arguing (1) it had no duty to protect Smalley, (2) punitive damages and past medical expenses should not have been awarded, and (3) the court erred in amending its original judgment.[3]

## II. VILLAGE'S DUTY TO PROTECT SMALLEY

Village argues that it had no duty to Smalley because the attack occurred in Scepurek's yard, an area over which Village had no control, and because Scepurek acquired the dogs after he moved in. Smalley contends that Village had a duty to use reasonable care to enforce its rules, and a duty to exercise reasonable care under these circumstances.

The Restatement (Second) of Torts § 323 (1965) imposes liability on a defendant that negligently performs an undertaking to render services:

One who undertakes, gratuitously or for consideration, to render services to an-

other which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

We have relied on this principle to establish a duty of care in a variety of factual situations. For example, a city which undertakes to provide police protection to its residents has a duty to exercise reasonable care in providing those services. *City of Kotzebue v. McLean*, 702 P.2d 1309, 1312–13 (Alaska 1985). Similarly, a defendant that voluntarily supplies a ladder for access between a tugboat and a dock is under a duty to exercise some degree of care toward those using the ladder. *Williams v. Municipality of Anchorage*, 633 P.2d 248, 251 (Alaska 1981). Finally, if the state voluntarily conducts building fire safety inspections, it must exercise reasonable care in conducting the inspection and abating known fire hazards. *Adams v. State*, 555 P.2d 235, 240–41 (Alaska 1976). However, evidence that the undertaking is for the plaintiff's benefit is a prerequisite to liability; a plaintiff who does not produce such evidence is not entitled to a jury instruction on this theory. *McLinn v. Kodiak Electric Ass'n*, 546 P.2d 1305, 1309 n.8 (Alaska 1976).

In *City of Kotzebue v. McLean*, 702 P.2d at 1313–15, we relied on the analytical factors adopted in *D.S.W. v. Fairbanks North Star Borough School District*, 628 P.2d 554 (Alaska 1981): (1) the foreseeability of harm to plaintiff, (2) the degree of certainty that plaintiff suffered injury, (3) the connection between defendant's con-

---

**1.** Smalley also sued Scepurek, Sandra Zartmann (who owned the dogs), the Municipality of Anchorage, and Stanley Smith Security, Inc.

**2.** The errors involved mistakes in computing statutory prejudgment interest and attorney's fees.

**3.** Village also challenged the admission and exclusion of certain evidence. Its evidentiary arguments are meritless.

duct and plaintiff's injury, (4) the moral blame attached to defendant's conduct, (5) the policy of preventing future harm, (6) the burden on the defendant and consequences to the community of imposing the duty, and (7) the availability, cost and prevalence of insurance for the risk. *Id.* at 555. We consider these factors to determine whether an actionable duty of care exists under the particular circumstances.

■ Applying these principles to the instant case, we conclude that Village had a duty to exercise reasonable care to enforce its rules and regulations. (1) There was ample evidence that Village had actual knowledge of prior incidents involving Scepurek's dogs, and therefore it was clearly foreseeable that a person such as Smalley might be harmed; (2) Smalley suffered injury; (3) her injuries are closely related to Village's failure to take any action to enforce its rules; (4) Village's blatant disregard of its tenants' safety is morally blameworthy; (5) our policy is to encourage owners to enforce their rules to prevent harm to others lawfully on the premises; (6) the burden on owners of enforcing their own rules is not onerous; and (7) owners may obtain insurance or require tenants who own vicious animals to do so.

Village undertook to control pets on the trailer park premises by the lease provision prohibiting tenants from keeping vicious dogs and requiring Scepurek to immediately remove annoying pets. One of the trailer park managers agreed that he had "an obligation to enforce the rules ... concerning pets for the safety and well-being of the tenants in that park." [Tr. 465] Smalley was entitled to rely on Village to perform its duty.

The court instructed the jury that Village is under a duty to exercise ordinary care in the enforcement of its rules and regulations providing for effective animal control in order to avoid exposing persons in the park to an unreasonable risk of harm. A failure to fulfill this duty, resulting in exposing persons to an unreasonable risk of harm, would be negligence.

This instruction is a correct statement of the law.

Given our conclusion that Village undertook the obligation to control vicious dogs in its trailer park, we do not reach Smalley's argument that a landlord has a more general duty of reasonable care under the circumstances presented here. *See Uccello v. Laudenslayer,* 118 Cal.Rptr. 741, 746–47, 44 Cal.App.3d 628, 118 Cal.Rptr. 741 (1975); *Strunk v. Zoltanski,* 62 N.Y.2d 572, 479 N.Y.S.2d 175, 176–178, 468 N.E.2d 13, 14–15 (1984); *Palermo v. Nails,* 334 Pa.Super. 544, 483 A.2d 871 (1984).

## III. EXEMPLARY DAMAGES

Village argues that, even if compensatory damages were justified, it is not liable for punitive damages resulting from the conduct of others, it did not violate a clear duty, and the award was excessive. Smalley contends that the $550,000 award was justified. The court instructed the jury that it could assess punitive damages if it found Village guilty of reckless indifference.

■ A jury may award punitive damages if a defendant acts with reckless indifference to a plaintiff's safety; the purpose of punitive damages is to punish the wrongdoer and prevent similar conduct in the future. *Sturm, Ruger & Co. v. Day,* 594 P.2d 38, 46–48 (Alaska 1979), *modified,* 615 P.2d 621 (Alaska 1980), *modified,* 627 P.2d 204 (Alaska 1981), *cert. denied,* 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981), *overruled on other grounds, Dura Corp. v. Harned,* 703 P.2d 396, 405 n.5 (Alaska 1985). We will reverse the award only if we have a firm conviction based on the record as a whole that the trial court erred and we must intervene to prevent a miscarriage of justice. *Id.*

■ Village can be held liable for punitive damages based on the actions of its employees. The Oregon Supreme Court recently adopted the majority rule that if a tort by an employee renders the employer liable for compensatory damages and the employee's actions justify a punitive dam-

age award, then the employer is liable for punitive damages, whether or not the employer authorized or ratified the tortious conduct. *Stroud v. Denny's Restaurant,* 271 Or. 430, 532 P.2d 790, 793 (1975). Under the reasoning of this rule, Village is liable for punitive damages if (1) the actions of its managers subject Village to liability for compensatory damages and (2) the managers acted with reckless indifference to Smalley's safety.

We conclude that the trial court correctly instructed the jury that the acts of Elaine Seegers, Curtis Johnson and Jean Bailey, the park managers, are attributable to Village as a matter of law, therefore their actions may subject Village to liability for compensatory damages.[4] The jury specifically found that Village acted with reckless indifference to the safety of others. Therefore, Village is liable for punitive damages under the majority rule as stated by the Oregon Supreme Court.

Village also argues that it should not be liable for punitive damages because it did not violate an unambiguous duty to Smalley. Therefore, it contends, punitive damages would only be appropriate in later cases.

■ Absent special circumstances, a new rule of law will apply in the case before the court and in all subsequent cases. *Plumley v. Hale,* 594 P.2d 497, 502–03 (Alaska 1979). However, the rule may apply purely prospectively if (1) the rule is one of first impression, or overrules prior law and was not foreshadowed by prior decisions, (2) defendant justifiably relied on prior interpretations, (3) undue hardship would result, and (4) the purpose and effect of the holding is best served by a purely prospective application. *Id.* In *State v. Haley,* 687 P.2d 305, 320 (Alaska 1984), we held that the trial court did not err in refusing to submit the question of punitive damages to

the jury where plaintiff's constitutional right to free expression was not so clearly defined that her employer was recklessly indifferent to her constitutional rights when he terminated her employment.

■ We conclude that the rule of prospectivity does not invalidate the exemplary award in this case. The imposition of a duty on Village was foreshadowed by our decisions applying Section 323 of the Restatement (Second) of Torts and the *D.S.W.* factors, 628 P.2d at 555. Today's decision does not overrule established precedent or prior interpretations upon which Village justifiably relied. Village has demonstrated no undue hardship and the purpose of our holding is best served by application in the instant case. Smalley's right to personal safety is very clearly defined; Village's disregard of numerous complaints by other tenants supports the jury's finding of reckless indifference.

■ In addition, Village argues that the amount of punitive damages was excessive. A punitive damage award is excessive if it is manifestly unreasonable, resulting from passion or prejudice or disregard of the rules of law. *American National Watermattress v. Manville,* 642 P.2d 1330, 1340 (Alaska 1982). Relevant factors include the compensatory damage amount, magnitude of the offense, importance of the policy violated, and the defendant's wealth. *Sturm, Ruger & Co.,* 594 P.2d at 47–48.

■ We do not believe that the $550,000 exemplary award is excessive. Compensatory damages were $235,000, so there is a reasonable relation between compensatory and punitive damages.

## IV. PAST MEDICAL EXPENSES

Village argues that an unemancipated minor has no right to recover compensato-

---

**4.** Village argues that it is liable for the acts of its managers only if an agency relationship exists, and that this presents a question of fact. The trial court ruled, as a matter of law, that the acts of Seegers, Johnson and Bailey are the acts of Village.

Seegers, Johnson and Bailey were employees of Olympic, Inc. Olympic is the major shareholder of Village. There is testimony in the record that Bailey, Johnson and Seegers were hired to manage Village at different times. The question whether they acted outside the scope of their employment was not raised at trial.

ry damages for past medical expenses, and therefore Smalley's compensatory award should be reduced.

As a rule, a parent has the primary right of action for past medical expenses incurred on behalf of an unemancipated minor child. *Lasselle v. Special Products Co.*, 677 P.2d 483, 486–87 (Idaho 1983); *Palmore v. Kirkman Laboratories*, 527 P.2d 391, 396–97 (Or.1974). However, the parent may impliedly waive her right to recover in favor of the child by failing to object when the child sues for those expenses or by testifying on the child's behalf. *Lasselle*, 677 P.2d at 486–87. *See also* Annot. 32 A.L.R.2d 1060 (1953).

Mary Smalley (Monica's mother) initially asserted a claim on her own behalf for negligent infliction of emotional distress which did not mention past medical expenses. However, *Monica* claimed she incurred past medical expenses. The parties later stipulated that Mary's claim for emotional distress would be dismissed with prejudice.

We conclude that Monica is entitled to recover past medical expenses. Although Mary had the primary right to recover those expenses, she impliedly waived her right in favor of Monica by allowing Monica to assert the claim and by testifying on her behalf. The only damages barred by the stipulated dismissal are those for Mary's emotional distress, the only claim asserted by Mary.

## V. AMENDING THE ORIGINAL JUDGMENT

Judge Souter signed the final judgment on January 25; it was mailed to Smalley's counsel on February 26 and received on March 1. Village appealed on March 20. Smalley's counsel discovered several errors around March 25 and moved to modify the judgment on April 8. Judge Souter signed an amended judgment on June 27.

The amended judgment (1) decreased the prejudgment interest awarded from December 1984 to January 1985 from $4,200 to $2,071.08, (2) decreased the cost award by one cent, and (3) increased the attorney's fee award from $24,994.76 to $79,781.88. The original judgment contains an arithmetical error and the total is erroneously stated as $586,581.22; the original awards actually total $828,028.83. The amended judgment totals $880,687.01.

Village contends that Judge Souter erred by amending the judgment to correct an error of law more than thirty days after it was distributed. Smalley argues that relaxation of the rules was proper to avoid injustice.

Clerical mistakes in judgments may be corrected by the court at any time. Civil Rule 60(a).[5] We believe that the errors in the prejudgment interest and cost award were clerical, therefore the trial court did not abuse its discretion in changing those amounts.

Civil Rule 60(b) permits the court to relieve a party from judgment for an error of law.[6] *See Cleary Diving Service v. Thomas, Head and Greisen*, 688 P.2d 940, 942 (Alaska 1984); *Alaska Truck Transport v. Berman Packing*, 469 P.2d 697, 699 (Alaska 1970). Such a motion must be brought within thirty days after entry of judgment, so that Civil Rule 60(b) is not used to circumvent the thirty day

---

**5.** Alaska R.Civ.P. 60(a) provides in part:
Clerical mistakes in judgments ... and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party....

**6.** Alaska R.Civ.P. 60(b) provides in part:
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment ... for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;
....
(6) any other reason justifying relief from the operation of the judgment.
The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the date of notice of the judgment....

time limit for filing an appeal. *Alaska Truck Transport*, 469 P.2d at 699–700. However, the court may relax this time limit in the interests of justice. *Id.*; Alaska R.Civ.P. 94. The standard of review is abuse of discretion. *Cleary Diving Service*, 688 P.2d at 942.

■ The trial court's failure to include the exemplary award in its computation of attorney's fees under the Civil Rule 82(a) schedule was a legal error. *Sturm, Ruger & Co. v. Day*, 627 P.2d 204, 205 (Alaska 1981), *cert. denied*, 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981). Smalley's request to modify the judgment occurred more than thirty days after entry of judgment, so the trial judge had discretion to relax the time limit in the interests of justice. We conclude that the trial court did not abuse its discretion by amending the judgment to grant attorney's fees on the punitive damage award.

AFFIRMED.