VECO, INC., Appellant and
Cross–Appellee,

v.

Constance I. ROSEBROCK, Appellee
and Cross–Appellant.

Nos. S–7080, S–7120.

Supreme Court of Alaska.

Feb. 19, 1999.

Donna C. Willard, Law Offices of Donna C. Willard, Anchorage, for Appellant and Cross–Appellee.

Robert P. Owens, Copeland, Landye, Bennett and Wolf, Anchorage, and Timothy D. Dooley, Anchorage, for Appellee and Cross–Appellant.

Before MATTHEWS, J., EASTAUGH, FABE, Justices, and RABINOWITZ, Justice Pro Tem.*

* Sitting by assignment under Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

OPINION

MATTHEWS, J.

I. *INTRODUCTION*

Many issues are presented in this sexual harassment and wrongful termination case. The two most important are:

(1) Can an employer be liable for acts of a supervisor which create a hostile work environment even though the supervisor is acting outside the scope of his employment?

(2) Can punitive damages be imposed for a supervisor's acts outside the scope of his employment?

We answer "yes" to the first question because the supervisor is enabled by his position with the employer to impose unwelcome sexual conduct on the employee. We answer "no" to the second question because it is unfair to punish an employer for acts committed by employees who are in no sense pursuing objectives of the employer.

II. *FACTS AND PROCEEDINGS*

Constance Rosebrock began working for VECO in Anchorage in April 1991. In September she transferred to Arctic Rentals, a VECO subsidiary located on the North Slope.[1] Rosebrock worked for Arctic Rentals on the North Slope for approximately six weeks, from September 11 until September 26, and from October 3 until October 26. On October 30 or 31 she was notified that she had been laid off.

Rosebrock claims that during her employment with VECO on the North Slope, Rick Rorick, the supervisor in charge of Arctic Rentals, subjected her to hostile environment sexual harassment. In addition, she claims that she was sexually assaulted by a VECO employee toward the end of her second tour of duty. She claims that VECO wrongfully terminated her when she complained about the assault.

In December 1991 Rosebrock filed a complaint with the Alaska Human Rights Commission. She also filed suit in superior court

1. VECO admits that Arctic Rentals is merely a division of VECO, and does not argue that it is a separate corporate entity.

against VECO and Bill Dropps, the employee who allegedly sexually assaulted her. After settlement negotiations in which Rosebrock agreed to dismiss Dropps as a party, Rosebrock's claims of hostile environment sexual harassment and wrongful termination proceeded to a jury trial.[2]

At trial, Rosebrock testified that Rorick had sexually propositioned her on several occasions. She also testified that Rorick made several explicit comments about the size of her breasts. Furthermore, Rosebrock testified that she, Bobby Clark, and Bill Dropps gathered in Dropps's room on October 23 to watch the World Series game.[3] She testified that when Clark left the room, Dropps grabbed her by her arms and legs and threw her onto the bed. They struggled, and he hit her in the ribs. After more struggling, however, he released her and begged her to not tell anyone.

Rosebrock also testified that early the next morning she reported the assault to Clark, who was her supervisor on duty at that time. She also claimed that she showed her bruises to a co-worker, Peggy Gerhardson, who assured her that she and Clark would take care of the problem.

Rosebrock went on leave two or three days later. She testified that before she left, the administrator, Norm Denison, approved her work schedule for the next five months. On October 30 or 31, however, Denison called her at home to tell her that she had been "laid off." Rosebrock testified that she then called Denison several times to see what VECO was doing about her complaints of sexual assault. Rosebrock claimed that Denison told her VECO had taken care of the problem. Rosebrock stated that when she asked him what had been done, he told her, "you're gone."

The jury found VECO liable for Rosebrock's hostile environment sexual harassment ˙claim and her wrongful termination claim. It awarded her $27,500 for emotional distress damages, $75,000 for lost wages, and $1,500,000 for punitive damages. VECO then moved for a judgment notwithstanding the verdict, for a new trial, and for a remittitur. The superior court granted a partial remittitur, reducing the award for lost wages to $4,000. It denied VECO's other motions.

VECO appeals this judgment.[4] Rosebrock cross-appeals on discovery sanction issues, in the event this court remands for a new trial.

## III. *DISCUSSION*

We discuss the following issues in this case:

A. Sexual Harassment

1. Did the superior court properly instruct the jury as to whether VECO could be held liable for hostile environment sexual harassment committed by a supervisor acting outside the scope of his employment?

2. Did the superior court err in denying VECO's motions for JNOV and for a new trial on Rosebrock's hostile environment sexual harassment claim?

 a. Was the evidence sufficient to support a finding that the harassment was severe or pervasive?

 b. Was the harassment committed by a supervisor whose actions can be imputed to VECO?

3. Are damages for emotional distress caused by sexual harassment barred by the exclusive remedy provision of the Alaska Workers' Compensation Act?

B. Wrongful Termination

1. Did the superior court err by permitting Rosebrock to amend her complaint after the trial had concluded?

2. Did the superior court properly instruct the jury as to whether VECO

---

**2.** While Rosebrock originally alleged both quid pro quo and hostile environment sexual harassment claims, the jury only decided the hostile environment sexual harassment claim.

**3.** Rosebrock testified that Clark was her supervisor when Rorick was not on the slope. Dropps

was also a supervisor, but he was not Rosebrock's supervisor and did not have any authority over her.

**4.** Counsel for VECO on appeal did not serve as its trial counsel.

could be held liable for the alleged wrongful termination of Rosebrock?

3. Did the superior court properly instruct the jury on mixed motives?

4. Did the superior court err in denying VECO's motions for JNOV and for a new trial on Rosebrock's wrongful termination claim?

### C. Punitive Damages

1. Are punitive damages authorized under AS 18.80.220 and AS 22.10.020(i)?

2. Did the jury instructions err in permitting the jury to award punitive damages against VECO for acts of a supervisor beyond the scope of the supervisor's employment?

3. Did VECO properly object to the punitive damage instruction?

The parties have also briefed additional issues which do not require discussion for reasons set out in footnote 38, page 925.

### A. *Sexual Harassment*

A section of Alaska's anti-discrimination statute makes it unlawful for an employer "to discriminate against a person in compensation or in a term, condition, or privilege of employment because of the person's ... sex ... when the reasonable demands of the position do not require distinction on the basis of ... sex...." AS 18.80.220(a)(1). In *French v. Jadon, Inc.*, 911 P.2d 20 (Alaska 1996), we held that this section prohibited sexual harassment. Further, we accepted the customary division of sexual harassment claims into those involving a quid pro quo and those which merely involve a hostile work environment.

---

5. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

6. *Id.*

7. Restatement (Second) of Agency § 228 defines scope of employment as follows:

(1) Conduct of a servant is within the scope of employment if, but only if:
 (a) it is of the kind he is employed to perform;

Concerning the former, we noted that "[q]uid pro quo gender harassment occurs when an employer conditions employment benefits on sexual favors. It arises when an employer relies upon his or her authority 'to extort sexual consideration from an employee.'" *Id.* at 26 (citation omitted) (quoting *Canada v. Boyd Group, Inc.*, 809 F.Supp. 771, 777 (D.Nev.1992)). With respect to the latter we noted that in

hostile work environment cases, "employees work in offensive or abusive environments. Conduct which unreasonably interferes with work performance can alter a condition of employment and create an abusive working environment.". . .

. . . [D]iscriminatory behavior sufficiently severe or pervasive to alter the conditions of the victim's employment and to create a discriminatory hostile work environment violates AS 18.80.220.

*Id.* at 28 (citations and footnote omitted) (quoting *Ellison v. Brady*, 924 F.2d 872, 875, 877 (9th Cir.1991)).

■ Quid pro quo harassment requires proof that "a tangible employment action resulted from a refusal to submit to a supervisor's sexual demand."[5] "Unfulfilled threats" or "offensive conduct in general" may fall within the hostile work environment classification.[6]

■ Often a hostile work environment is created by co-employees or supervisors acting beyond the scope of their employment. They are acting for personal reasons and not, even in part, to serve their employer.[7] However, in the case of supervisors, harassment, though beyond the scope of their employment, may be facilitated by their position with the employer.

---

 (b) it occurs substantially within the authorized time and space limits;
 (c) it is actuated, at least in part, by a purpose to serve the master, and
 (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

An employer is generally vicariously liable only for acts of employees acting within the scope of their employment. However, vicarious liability may also be imposed based on apparent authority or where an employee is aided in accomplishing a tort by the employee's position with the employer.[8] But an employer's vicarious liability for punitive damages is limited by the Restatement (Second) of Agency to acts of (1) managerial employees (2) while acting within the scope of their employment.[9] Alaska case law has eliminated the requirement that the employees be managerial,[10] but not the requirement that their acts be within the scope of their employment.

These principles are dispositive of the present case.

1. *Did the superior court properly instruct the jury as to whether VECO could be held liable for hostile environment sexual harassment committed by a supervisor acting outside the scope of his employment?*[11]

■■■ VECO claims that the superior court's instructions on liability were erroneous because they allowed the jury to impose "strict liability" on it if a low-level supervisor subjected Rosebrock to hostile environment sexual harassment, or if a low-level supervisor knew about the harassment, but failed to take remedial action. It argues that it should only be liable for a supervisor's hostile environment sexual harassment if a management-level employee knew or should have known about the harassment and failed to take proper and effective remedial action.[12] Rosebrock, however, argues that an employer should always be liable for hostile environment sexual harassment if it is committed by its supervisors or if its supervisors had knowledge and failed to take remedial action.

The superior court instructed the jury on liability as follows in Instruction No. 16:

If you find that VECO employees subjected Rosebrock to a sexually hostile working environment as previously defined, you must decide whether VECO itself is liable for its employees' conduct.

You must first consider the role of VECO supervisory employees. You shall find VECO liable for the conduct of its

**8.** Section 219 of the Restatement (Second) of Agency provides in relevant part:

(1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.
(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:

. . . .

(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

**9.** Section 217C of the Restatement (Second) of Agency provides:

Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:
(a) the principal authorized the doing and the manner of the act, or
(b) the agent was unfit and the principal was reckless in employing him, or
(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
(d) the principal or a managerial agent of the principal ratified or approved the act.

**10.** *See Alaskan Village, Inc. v. Smalley*, 720 P.2d 945, 948–49 (Alaska 1986).

**11.** Jury instructions involve questions of law, which this court reviews using its independent judgment. *See Aviation Assocs., Ltd. v. TEMSCO Helicopters, Inc.*, 881 P.2d 1127, 1130 n. 4 (Alaska 1994). An erroneous statement of law in jury instructions will not be reversed unless prejudice is shown. *Id.*

**12.** A management-level employee has been defined as one who has the "stature and authority of the agent to exercise control, discretion and independent judgment over a certain area of a business with some power to set policy for the company." *Fitzgerald v. Mountain States Tel. & Tel. Co.*, 68 F.3d 1257, 1263 (10th Cir.1995); *see also Albuquerque Concrete Coring Co. v. Pan Am World Servs., Inc.*, 118 N.M. 140, 879 P.2d 772, 777 (N.M.1994) (defining managerial employee "as one who 'formulates, determines and effectuates his employer's policies, one with discretion or authority to make ultimate determinations independent of company consideration and approval of whether a policy should be adopted.' ") (quoting *Kemner v. Monsanto Co.*, 217 Ill.App.3d 188, 160 Ill.Dec. 192, 576 N.E.2d 1146, 1157 (Ill.App.1991)).

supervisory employees if you find that it is more likely than not that:

1. One or more of VECO's supervisory employees encouraged, caused, permitted, ratified, or participated in the conduct; or

2. One or more of VECO's supervisory employees, knowing of the conduct, excused it or failed to take remedial action reasonably calculated to end the harassment. Such remedial action must be immediate and must remedy the conduct without adversely affecting the terms or conditions of the complaining party's employment.

You shall find VECO liable for the conduct of its non-supervisory employees if you find that it is more likely than not that such employees were acting within the scope of their employment, and if VECO knew or should have known of the harassment and failed to take remedial action as discussed above.

■ The first paragraph of the instruction directs the jury to proceed if "VECO employees," supervisors or otherwise, subjected Rosebrock to a hostile work environment. The second paragraph defines when VECO will be liable for the acts or omissions of its "supervisory employees." The subparagraph numbered one allowed the jury to impose liability on VECO if its supervisory employees "encouraged, caused, permitted, ratified, or participated" in the harassment. It did not require the jury to find that those supervisors had acted within the scope of their employment or used their delegated authority to carry out the harassment. In addition, it did not require the jury to find that a management-level employee knew or should have known about the harassment. Thus this subparagraph allowed the jury to impose liability on VECO for the sexual harassment by a low-level supervisor, acting outside the scope of his employment, even if VECO man-

agement-level employees did not know or have constructive knowledge of the harassment.

Subparagraph number two allowed the jury to impose liability on VECO if a supervisor knew about the harassment, but did not take proper remedial action. It did not limit VECO's liability to an omission by a management-level employee, but allowed the jury to impose liability on VECO for a low-level supervisor's failure to take proper remedial action.[13]

Instruction 17 defined "supervisor" as follows:

A supervisor is one who serves in a supervisory position and has corporate authority to affect the terms and conditions of the employees he supervises. In other words a person is a supervisor if he has the authority to hire, fire, promote, discipline, or in any other manner affect the terms or conditions of an employee's employment.

Taken together these instructions allowed the jury to impose liability on VECO for the acts or omissions of Rosebrock's immediate supervisors, regardless of whether they were acting within the scope of their employment, and regardless of whether management-level employees knew or should have known about the harassment.

The scope of an employer's liability for its employees' hostile environment sexual harassment is an issue of first impression in Alaska. In interpreting Alaska's anti-discrimination laws, we have looked to federal Title VII cases for guidance.[14] See French, 911 P.2d at 28 n. 8. We have observed, however, that AS 18.80.220 "is intended to be more broadly interpreted than federal law to further the goal of eradication of discrimina-

**13.** Paragraph three imposes liability on VECO for hostile environment sexual harassment by non-supervisors who acted within the scope of their employment, as long as VECO knew or should have known about the harassment. VECO does not challenge this part of the instruction.

**14.** Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an em-

ployer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 66–67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the United States Supreme Court held that Title VII prohibits hostile environment sexual harassment.

tion." *Wondzell v. Alaska Wood Prods., Inc.*, 601 P.2d 584, 585 (Alaska 1979).

The United States Supreme Court addressed the issue of employer liability in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).[15] Because the factual record had not been fully developed in the trial court, the majority opinion refused to "issue a definitive rule on employer liability," but stated that

> we do agree with the EEOC that Congress wanted courts to look to agency principles for guidance in this area. While such common-law principles may not be transferable in all their particulars to Title VII, Congress' decision to define "employer" to include any "agent" of an employer, 42 U.S.C. § 2000e(b), surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible. For this reason, we hold that the Court of Appeals erred in concluding that employers are always automatically liable for sexual harassment by their supervisors. See generally Restatement (Second) of Agency §§ 219–237 (1958). For the same reason, absence of notice to an employer does not necessarily insulate that employer from liability.

*Id.* at 72, 106 S.Ct. 2399. The Court stated that the court of appeals was "wrong to entirely disregard agency principles and impose absolute liability on employers for the acts of their supervisors, regardless of the circumstances of a particular case."[16] *Id.* at 73, 106 S.Ct. 2399.

Justice Marshall, concurring with three other justices in *Meritor*, reached the issue of employer liability, and stated that employers should be held liable for a supervisor's hostile environment sexual harassment of an employee under his supervision, regardless of notice. *See* 477 U.S. at 74, 76–77, 106 S.Ct. 2399 (Marshall, J., concurring). He stated:

> [I]t is the authority vested in the supervisor by the employer that enables him to commit the wrong: *it is precisely because the supervisor is understood to be clothed with the employer's authority that he is able to impose unwelcome sexual conduct on subordinates.* There is therefore no justification for a special rule, to be applied *only* in "hostile environment" cases, that sexual harassment does not create employer liability until the employee suffering the discrimination notifies other supervisors. *No such requirement appears in the statute, and no such requirement can coherently be drawn from the law of agency.*

*Id.* at 76–77, 106 S.Ct. 2399 (first and third emphasis added). He emphasized that a supervisor's authority is not limited to changing employees' status by hiring, firing, or disciplining them; instead, a supervisor also has the responsibility to supervise the daily work environment and to ensure a safe, productive work environment. *See id.* at 76, 106 S.Ct. 2399.[17]

15. In *Meritor*, a female bank employee alleged that her supervisor, who was a bank vice-president and branch manager, had sexually harassed her. 477 U.S. at 59–60, 106 S.Ct. 2399. In dicta, the district court held that the bank could not be held liable because it did not have any knowledge of the alleged harassment. *Id.* at 61–62, 106 S.Ct. 2399. The Court of Appeals for the District of Columbia reversed, holding that the bank was liable for sexual harassment by its supervisory personnel, regardless of whether or not it knew or should have known about the conduct. *Vinson v. Taylor*, 753 F.2d 141, 150 (D.C.Cir.1985). It held that a supervisor is an agent of his employer and, even if he lacks authority to hire, fire, or promote, "the mere existence—or even the appearance—of a significant degree of influence in vital job decisions gives any supervisor the opportunity to impose on employees." *Id.* (footnote omitted).

16. *Meritor* does not prohibit courts from imposing vicarious liability on employers for hostile environment sexual harassment committed by their supervisors. Rather, it only prohibits federal courts from "concluding that employers are *always automatically liable* for sexual harassment by their supervisors." 477 U.S. at 72, 106 S.Ct. 2399 (emphasis added). Thus, *Meritor* allows federal courts to impose vicarious liability in some instances.

17. In response to *Meritor*, lower federal courts fashioned confusing and even contradictory rules for when employers can be held vicariously liable for sexual harassment committed by their supervisors. *See* Frederick J. Lewis & Thomas L. Henderson, *Employer Liability for "Hostile Work Environment" Sexual Harassment Created by Supervisors: The Search for an Appropriate Standard*, 25 U. Mem. L.Rev. 667 (1995) (providing a

We agree with Justice Marshall's view. Harassment by supervisors is facilitated, made more serious, and is less apt to be reported because supervisors are "understood to be clothed with the employer's authority." *Id.* at 77, 106 S.Ct. 2399. The Restatement (Second) of Agency § 219(2)(d) supports imposing vicarious liability in such circumstances. It provides:

> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
>
> . . . .
>
> (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, *or he was aided in accomplishing the tort by the existence of the agency relation.*

(Emphasis added.)

The Massachusetts Supreme Court has employed this theory to hold employers vicariously liable for hostile environment sexual harassment by their supervisors:

> [H]arassment by a supervisor carries an implied threat that the supervisor will punish resistance through exercising supervisory powers, which may range from discharge to assignment of work, particularly exacting scrutiny, or refusal to protect the employee from coworker harassment.

Quid pro quo harassment may be easier to identify as an abuse of the authority vested in a supervisor because of the effect on tangible job conditions, but it does not define the limit of a supervisor's authority. Although coworkers or even outsiders may also be capable of creating a sexually harassing work environment, *it is the authority conferred upon a supervisor by the employer that makes the supervisor particularly able to force subordinates to submit to sexual harassment.*

*College–Town v. Massachusetts Comm'n Against Discrimination,* 400 Mass. 156, 508 N.E.2d 587, 593 (Mass.1987) (emphasis added) (citation omitted).

Even where the employer has issued a policy prohibiting sexual harassment, and where the employer has established procedures for the receipt of employee complaints, the employer will still have aided the supervisor in committing the harassment. *See Meritor,* 477 U.S. at 76–77, 106 S.Ct. 2399 (Marshall, J., concurring). Therefore, we hold that an employer is vicariously liable for the hostile work environment created by its supervisors regardless of whether management-level employees knew or should have known about the harassment, and regardless of whether the supervisors were acting within the scope of their employment.[18]

survey of the standards which the various federal circuits have employed).

**18.** In *Burlington Industries v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), both decided after this case was briefed and argued, the United States Supreme Court revisited the subject of hostile work environment sexual harassment cases and made a number of observations relevant to this case. The Court noted that for sexual harassment to be actionable it must be "severe or pervasive," that the non-statutory terms "quid pro quo" and "hostile work environment" illustrate the distinction between cases which involve a threat which is carried out and generally offensive conduct, but are not in themselves controlling as to the imposition of vicarious liability, and that generally "sexual harassment by a supervisor is not conduct within the scope of employment." *Burlington* at 2265, 2267. The Court endorsed the application of the "aided in agency" theory expressed in the Restatement (Second) of Agency § 219(2)(d). However, where no tangible employment action has been taken, the Court devised an affirmative de-

fense for the employer. The defense consists of two elements:

> (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

*Burlington* at 2270, *Faragher* at 2293. While these recent cases are thus in several respects

Agency principles also provide an important limitation on employer liability, however. An employer will only be vicariously liable for the acts of the complainant's supervisor, because only then will the supervisor be using his position with the employer to alter the conditions of the complainant's employment. *See French,* 911 P.2d at 28 (defining hostile work environment as "discriminatory behavior sufficiently severe or pervasive to alter the conditions of the victim's employment"). As Justice Marshall stated, a supervisor who does not oversee the complainant should be treated as a co-worker. *See Meritor,* 477 U.S. at 77, 106 S.Ct. 2399 (Marshall, J., concurring). In that situation, the supervisor does not have authority over the complainant and may not be aided by his position in the workplace. Furthermore, when a co-worker or supervisor with no control over the complainant creates a hostile environment, the complainant should be less hesitant to report the situation, since the harasser could not retaliate by changing the conditions of the complainant's employment. Thus, employers are only vicariously liable for hostile environment sexual harassment committed by the complainant's supervisor.[19]

These same principles apply to determine the scope of an employer's liability when its supervisors know about sexual harassment by a co-worker or by a supervisor who does not have authority over the complainant, but fail to take appropriate remedial action.

There is no basis for distinguishing between supervisors' acts of harassment and their failure to remedy known harassment. Supervisors who allow other employees to sexually harass employees they supervise have used their delegated authority to allow the harassment to continue.

For the above reasons we conclude that the trial court correctly instructed the jury on VECO's liability for hostile environment sexual harassment by a supervisor acting outside the scope of his employment.

2. *Did the superior court err in denying VECO's motions for JNOV and for a new trial on Rosebrock's hostile environment sexual harassment claim?*[20]

VECO filed motions for judgment notwithstanding the verdict (JNOV) and for a new trial, alleging that the evidence was insufficient to support a finding of liability for hostile environment sexual harassment. VECO claims that the evidence did not support the jury's implied findings that the alleged harassment was severe or pervasive or that the alleged harassers were supervisors whose actions could be imputed to VECO.

a. *Was the evidence sufficient to support a finding that the harassment was severe or pervasive?*[21]

In *French,* we held that "discriminatory behavior sufficiently severe or perva-

---

supportive of the views we express herein as to the liability of an employer for the harassive acts of a supervisor, we have no occasion to consider whether the affirmative defense which they announce should be adopted as a feature of Alaska anti-discrimination law. Understandably, the issue of the adoption of such a defense was not raised below or on appeal.

**19.** The parties have used the term "strict liability" to describe holding the employer liable for the acts of its supervisors. Since our analysis is based on agency principles, the liability is more accurately defined as "vicarious liability."

**20.** As stated in *Diamond v. Wagstaff,* 873 P.2d 1286, 1290 (Alaska 1994):

When reviewing a motion for a judgment n.o.v., we determine whether evidence, when viewed in the light most favorable to the non-movant, is such that reasonable persons could not differ in their judgment. We neither weigh

the evidence nor judge the credibility of witnesses. Rather, we employ an objective test: If there is room for diversity of opinion among reasonable people, then a jury question exists.

We review the superior court's denial of a motion for a new trial for an abuse of discretion. An abuse of discretion occurs only if the evidence supporting the jury's verdict was either completely lacking or slight and unconvincing, so that the verdict was manifestly unreasonable and unjust. Again, we draw all inferences from the facts in the light most favorable to the non-movant.

When reviewing a jury verdict under these standards, this court necessarily considers hypothetical explanations for the jury's determination. Otherwise, we would not be able to review verdicts at all.

(Citations omitted.)

**21.** The trial in this case was held before we decided *French.* However, the superior court used the same standard called for in *French,* and

sive to alter the conditions of the victim's employment and to create a discriminatory hostile work environment violates AS 18.80.220." 911 P.2d at 28. VECO argues that the evidence at trial does not support the jury's verdict, because the evidence consisted of name-calling and insults, which was not severe or pervasive harassment. Viewing all the evidence in the light most favorable to Rosebrock, we disagree.

The evidence of sexual harassment, in part, is as follows. Rosebrock testified that on her first tour of duty, when she was introduced to her supervisor, Rick Rorick, he stated, "Let's get down to business. Are you married, and do you fool around?" Rosebrock also testified that Rorick told her that strange things happened to women in the middle of the night. In addition, Rorick would say to her, on occasion, "You're in a good mood. Who are you doing?" He would ask her if her back ached, or why she did not fall over, apparently referring to the size of her breasts.

Rosebrock also testified that when she approached Rorick to complain about not receiving a room assignment, he asked her to come to his room later that night. She stated that when she did go to talk with him, for the purpose of receiving a room assignment, he said, "I knew you from [another job on] rig 9. You were the redhead with the big tits." He also said that she could stay with him in his room, so long as no one saw her leave in the morning.

Also, Rosebrock testified that soon after she started her second tour of duty, Rorick pointed to her in public and shouted, "Boone and Crocket." Rosebrock discovered that the comment referred to her breasts. She claimed that it became common for people at VECO to call her by that name, and that to avoid hearing it, she would refrain from entering the dining hall for two meals every day and would go there late for dinner.

Viewing all of the evidence in the light most favorable to Rosebrock, reasonable jurors could have concluded that Rorick's behavior was severe or pervasive enough to alter the conditions of Rosebrock's employment and create a hostile work environment. The sexualized name-calling, in particular, was recurrent. While any single incident of name-calling might not have been severe, taken together, these incidents constitutes a pattern of harassment which might reasonably be regarded as severe or pervasive. *See, e.g., Ellison v. Brady,* 924 F.2d 872, 876–81 (9th Cir.1991) (indicating that the required showing of severity varies inversely with the pervasiveness of the conduct).

b. *Was the harassment committed by a supervisor whose actions can be imputed to VECO?*

■ VECO claims that the alleged harassment was not committed by a supervisor whose actions can be imputed to VECO. We have held that VECO may be vicariously liable if Rosebrock's supervisors subjected her to hostile environment sexual harassment. VECO offered the jury instruction which defined supervisor as follows:

A supervisor is one who serves in a supervisory position and has corporate authority to affect the terms and conditions of the employees he supervises. In other words a person is a supervisor if he has the authority to hire, fire, promote, discipline, or in any other manner affect the terms or conditions of an employee's employment.

Therefore, the only question is whether the evidence, taken in the light most favorable to Rosebrock, could lead reasonable jurors to infer that the harasser, Rorick, was Rosebrock's supervisor. The evidence supports such a conclusion.

First, and most persuasive, Rorick admitted that he had the authority to fire Rosebrock, and that he had the power to disci-

VECO does not challenge the superior court's employment of the severe or pervasive standard. The superior court also instructed the jury that, in evaluating whether the behavior complained of was severe or pervasive, "You should consider this question from the perspective of a reasonable woman: would a reasonable woman consid-er the conduct sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment?" In *French,* we specifically declined to decide whether to adopt the "reasonable woman" standard. *French,* 911 P.2d at 28 n. 10. VECO does not appeal this instruction, so we have no occasion to review it.

pline and sanction employees. Rorick also testified that he would expect Rosebrock to complain to him about room assignments.

We thus hold that the evidence was sufficient to support the jury's verdict that VECO was liable for hostile environment sexual harassment, because Rosebrock's supervisor subjected her to severe or pervasive sexual harassment. The superior court did not err in denying VECO's motions for a new trial or JNOV on Rosebrock's hostile environment sexual harassment claim.

3. *Are damages for emotional distress caused by sexual harassment barred by the exclusive remedy provision of the Alaska Workers' Compensation Act?* [22]

VECO argues that Rosebrock should not have been able to obtain emotional distress damages. It contends that these were barred by the exclusive remedy provision of the Workers' Compensation Act.[23]

Alaska Statute 22.10.020(i) authorizes a court finding a violation of any of the provisions of AS 18.80 to award "any other relief including the payment of money, that is appropriate." We have held that this includes an award of compensatory damages. *See Loomis Elec. Protection, Inc. v. Schaefer*, 549 P.2d 1341, 1343 (Alaska 1976).

In *Loomis* we observed that the objective of the anti-discrimination law was to afford complete relief to parties injured by discrimination.

The language of the statute is clearly intended to provide a litigant complete relief in an appropriate case. In view of the strong statement of purpose in enacting AS 18.80, and its avowed determination to protect the civil rights of all Alaska citizens, we believe that the legislature intended to put as many "teeth" into this law as possible. We fail to see how, consistent with that purpose and intent, the legislature could have contemplated a statutory scheme that would not have included the right to recover damages. Otherwise, there would be many cases in which no meaningful relief would be available to the injured party, the one whose civil rights have been violated and whom the law seeks to protect.

*Id.* at 1343 (footnotes omitted).

The Alaska Workers' Compensation Act does not provide compensation for emotional distress which does not result in permanent or partial disability. It would be inconsistent with the legislative purpose of affording complete relief to those injured by discrimination to hold that nonduplicative damages are barred by the exclusive remedy provision of the Workers' Compensation Act.

In declining to so hold we join the courts of many other states which have held that the exclusive remedy provisions of their workers' compensation laws do not bar intangible injury claims resulting from sexual harassment. *See Hart v. National Mortgage & Land Co.*, 189 Cal.App.3d 1420, 235 Cal. Rptr. 68, 75 (Cal.App.1987); *Cox v. Brazo*, 165 Ga.App. 888, 303 S.E.2d 71, 73 (Ga.App. 1983); *O'Connell v. Chasdi*, 400 Mass. 686, 511 N.E.2d 349, 351–52 (Mass.1987); *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 340 S.E.2d 116, 120–21 (N.C.App.1986); *Palmer v. Bi–Mart Co.*, 92 Or.App. 470, 758 P.2d 888, 891 (Or.App.1988).

B. *Wrongful Termination*

1. *Did the superior court err by permitting Rosebrock to amend her complaint after the trial had concluded?* [24]

Rosebrock's pleadings did not explicitly allege that her wrongful termination claim was brought pursuant to AS 18.80.220(a)(4).[25] Rather, the complaint stated:

*See Rodriguez v. Rodriguez*, 908 P.2d 1007, 1011 (Alaska 1995).

**22.** Statutory interpretation is a question of law which this court reviews using its independent judgment. *See Huf v. Arctic Alaska Drilling Co.*, 890 P.2d 579, 580 n. 2 (Alaska 1995).

**23.** AS 23.30.055.

**24.** The superior court is accorded wide discretion in ruling on motions to amend pleadings.

**25.** AS 18.80.220(a)(4) provides that it is an unlawful employment practice for "an employer, labor organization, or employment agency to discharge, expel, or otherwise discriminate against a person because the person has opposed any practices forbidden under AS 18.80.200–

20. Plaintiff's termination was wrongful in that she was discharged for asserting her right as an employee to be free from sexual assault and harassment, a right that is of important public interest as reflected in both federal and state statutes and case law.

. . . .

22. Defendant VECO's action in discharging plaintiff for this reason was willful, wanton and malicious and beyond the bounds of socially tolerable conduct, warranting the assessment of punitive damages against defendant VECO.

■■■ In response to VECO's summary judgment motion, the superior court ruled that Rosebrock's wrongful termination claim could proceed to trial. It stated that if she prevailed, Rosebrock would be entitled to "damages for emotional distress and punitive damages, since wrongful termination in violation of public policy constitutes a tort." Thus, the superior court permitted the wrongful termination claim to proceed as a public policy tort. At trial, however, the claim was presented to the jury as a retaliation claim in conformance with the elements that would be necessary for a wrongful termination claim under AS 18.80.220. Then, after the trial concluded, the superior court permitted a retroactive amendment of Rosebrock's complaint to include a wrongful termination claim under AS 18.80.220. VECO argues that it was unfairly prejudiced by the retroactive amendment of Rosebrock's complaint.

We believe that Rosebrock's pleadings sufficiently placed VECO on notice that it was being sued for wrongful termination, and that punitive damages would be sought.[26] While the superior court did state, in ruling

on a summary judgment motion, that the wrongful termination claim would proceed as a public policy tort, the trial, in fact, conformed to a retaliation claim under AS 18.80.220. Additionally, VECO has not established that it was prejudiced by the retroactive amended pleading—that is, it did not suggest how it might have tried the case differently if it had known throughout the lawsuit that Rosebrock would prosecute her wrongful termination claim under AS 18.80.220.[27] Therefore, we hold that the superior court did not abuse its discretion by allowing the post-trial amendment of Rosebrock's complaint.[28]

2. *Did the superior court properly instruct the jury as to whether VECO could be held liable for the alleged wrongful termination of Rosebrock?*

Quoting only a portion of Jury Instruction Number 21, VECO claims that it is erroneous because it allowed the jury to rule in favor of Rosebrock on her wrongful termination claim by finding only that Rosebrock demonstrated that VECO's stated reason for her termination was pretextual. VECO argues that the jury was not required to find that its reason for terminating Rosebrock was retaliatory.

In determining whether an employer has violated AS 18.80.220 when there is no direct evidence of discriminatory intent, we have adopted the three-part framework used in Title VII cases. *See Haroldsen v. Omni Enterprises, Inc.*, 901 P.2d 426, 430 (Alaska 1995) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). This test also governs actions for retaliatory discharge. *See Miller*

18.80.280 or because the person has filed a complaint, testified, or assisted in a proceeding under this chapter...."

**26.** *See Knight v. American Guard & Alert, Inc.*, 714 P.2d 788, 791 (Alaska 1986) (stating that pleadings should be construed liberally).

**27.** VECO does claim that it would have pursued a different tactic. However, we are unable to distinguish between the trial tactic that VECO actually used and the tactic that it claims it would have used.

**28.** VECO also argues that it was prejudiced if this court rules that AS 18.80.220 does not support punitive damages, since Alaska does not recognize a public policy tort that would serve as an alternative grounds for imposing punitive damages. Since we hold that this statute does authorize awards of punitive damages, *see infra* III.C.1., VECO was not prejudiced. We do not reach the issue of whether a public policy tort should be recognized in the circumstances of this case or whether such a claim would support an award of punitive damages.

*v. Fairchild Industries, Inc.*, 797 F.2d 727, 730–31 (9th Cir.1986).

The *Miller* court stated:

To establish a prima facie case of discriminatory retaliation, a plaintiff must show that: (1) she engaged in an activity protected under Title VII; (2) her employer subjected her to adverse employment action; (3) there was a causal link between the protected activity and the employer's action. Causation sufficient to establish a prima facie case of unlawful retaliation may be inferred from the proximity in time between the protected action and the allegedly retaliatory discharge....

Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory explanation for the action.... To satisfy this burden, the employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."

If the employer successfully rebuts the inference of retaliation that arises from establishment of a prima facie case, then the burden shifts once again to the plaintiff to show that the defendant's proffered explanation is merely a pretext for discrimination.

*Id.* at 731 (citations and footnote omitted) (quoting *Texas, Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 257, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

 Instruction Number 21, read in its entirety, properly instructed the jury on Rosebrock's wrongful termination claim.[29] The

---

**29.** The superior court's instructions in their entirety as they pertain to Rosebrock's wrongful termination claim provide:

Rosebrock's second claim is for wrongful termination. Rosebrock claims that she was terminated in retaliation for complaining of sexual harassment and/or sexual assault. In order to find that Rosebrock was wrongfully terminated, you must find that it is more likely than not that:

1) Rosebrock complained about sexual harassment and/or sexual assault;

2) VECO terminated Rosebrock; and

3) There was a causal connection between Rosebrock's complaints and the termination.

There are two ways that Rosebrock can show that there was a causal connection between her complaints and her lay-off. She may show, first, that VECO's only reason for terminating her was retaliatory. In such case, she must demonstrate that any reason stated by VECO for its actions was merely pretextual, and not true. This is called a "pretext" claim. Second, she may show that even if VECO had a legitimate motive for terminating her, retaliation was also a causal factor in the lay-off. This is called a "mixed motive" claim.

To prevail on either of these claims, Rosebrock must first prove two things. First, she must prove that she complained to VECO supervisory or management employees about sexual harassment and/or sexual assault.

Second, Rosebrock must prove that after she complained of sexual harassment and/or assault, she was terminated.

To prevail on her pretext claim, Rosebrock must next establish that it is more likely than not that VECO's real reason for terminating her was the fact that she complained of sexual harassment and/or sexual assault. VECO claims that it laid Rosebrock off as part of company-wide cost-cutting reductions in force. In managing its affairs, a business is entitled to exercise managerial discretion. This means that even though you think a particular decision is wrong and you would have acted differently had it been up to you, as long as complaints of sexual harassment or sexual assault were not a causal factor in the decision, it is lawful.

You must decide whether VECO's stated reason for Rosebrock's lay-off was "pretextual," or not the true reason for Rosebrock's termination. If you decide that it is more likely than not that VECO's stated reason was pretextual, you must find that Rosebrock has established her claim for wrongful termination.

To prevail on her mixed motive claim, Rosebrock need not establish that her complaints constituted the sole motivation or even the primary motivation for VECO's action. Plaintiff must prove that it is more likely than not that her complaints were a causal factor in her termination, even though VECO may also have been motivated by other factors.

If you find that Rosebrock has proved that her sexual harassment and/or sexual assault complaint was/were motivating factor(s) in her termination, then you must find for Rosebrock on her mixed motive wrongful termination claim, unless you also find that VECO has proved that it is more likely than not that it would have made the same decision, if Rosebrock had not complained of sexual harassment and/or sexual assault. If you find that VECO would have made the same employment decision if Rosebrock had not made her complaint, then you must find for VECO on the mixed motive wrongful termination claim.

The fact that Rosebrock was an "at will" employee who could be terminated without

jury was instructed that Rosebrock first had to prove facts that gave rise to an inference of wrongful termination—that "she complained to VECO supervisory or management employees about sexual harassment and/or sexual assault," and that "after she complained of sexual harassment and/or assault, she was terminated." Next, the instruction informed the jury that VECO had alleged a legitimate, non-discriminatory reason for terminating Rosebrock. Finally, the instruction placed the burden of persuasion on Rosebrock to prove that "it is more likely than not that VECO's real reason for terminating her was the fact that she complained of sexual harassment and/or sexual assault."

Contrary to Veco's claim, the instruction did not allow the jury to impose liability based solely on its disbelief of VECO's stated reason for terminating Rosebrock. We therefore hold that when the text of Instruction Number 21 is considered in its entirety, the instruction is not erroneous.

3. *Did the superior court properly instruct the jury on mixed motives?*

VECO claims that Jury Instruction Number 21, as it relates to mixed-motive sexual harassment, is incorrect. Specifically, VECO claims that mixed-motive causation does not apply to cases of retaliation, and also claims that Rosebrock had to choose either a pretext claim or a mixed-motive claim, but could not pursue both simultaneously.

VECO cites no authority for the proposition that consideration of mixed motives is impermissible in wrongful termination retaliation cases. Authority does support the opposite proposition, however. *See, e.g., Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 185 (2d Cir.1992) ("We reject the district court's view that a claim of retaliation necessarily presents only a pretext case and cannot be a mixed-motives case."); *see also Haroldsen*, 901 P.2d at 432 n. 12 (noting that our anti-discrimination laws condemn employ-

ment decisions based on a mixture of legitimate and illegitimate considerations).

The question of whether a mixed-motive theory applies to wrongful termination depends on the interpretation of the term "because" in AS 18.80.220.[30] In interpreting Title VII, the United States Supreme Court, in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), held that the words "because of ... sex" mean that "gender must be irrelevant to employment decisions." It emphasized that the words "because of" do not mean "*solely* because of," and held that Title VII prohibited decisions "based on a mixture of legitimate and illegitimate considerations." *Id.* at 241, 109 S.Ct. 1775. The Court then held that if the plaintiff shows that gender was a "motivating part in an employment decision, the defendant may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed gender to play such a role." *Id.* at 244–45, 109 S.Ct. 1775 (footnote omitted).

The analysis that the Supreme Court applied to Title VII sexual discrimination is equally applicable to a wrongful termination claim pursuant to AS 18.80.220(a)(4). In both situations, the employer is prohibited from making an employment decision where an illegitimate consideration is a motivating factor in the decision. Requiring plaintiffs in wrongful termination cases to prove that their termination was caused solely by their protected actions would unnecessarily restrict the term "because," and would hinder achieving the purpose of AS 18.80.220, eradicating discrimination. We therefore hold that a wrongful termination claim pursuant to AS 18.80.220(a)(4) can be based on mixed-motive causation.

We also reject VECO's argument that the plaintiff must choose between pursuing a mixed-motive theory and a pretext theory. The Supreme Court in *Price Waterhouse* held that a plaintiff can assert a mixed-

cause does not mean that VECO could terminate Rosebrock because she complained of sexual harassment or sexual assault.

**30.** AS 18.80.220(a)(4) provides that it is unlawful for an employer to "discharge, expel, or other-

wise discriminate against a person *because* the person has opposed any practices forbidden under AS 18.80.200–18.80.280 or *because* the person has filed a complaint, testified, or assisted in a proceeding under this chapter...." (Emphasis added.)

motive claim when the employer considered both legitimate and illegitimate reasons in making its employment decision. *See* 490 U.S. at 241, 109 S.Ct. 1775. However, "[i]f the plaintiff fails to satisfy the factfinder that it is more likely than not that a forbidden characteristic played a part in the employment decision, then she may prevail only if she proves ... that the employer's stated reason for its decision is pretextual." *Id.* at 247 n. 12, 109 S.Ct. 1775.

Thus, *Price Waterhouse* does explicitly contemplate that a plaintiff can pursue a mixed-motive claim and a pretext claim simultaneously. There is no reason to make the plaintiff elect which theory to present to the jury. If the jury finds that there is direct evidence that the employer considered a forbidden characteristic in terminating the plaintiff, it will apply the mixed-motive framework. However, if the jury does not find direct evidence, the plaintiff can still prevail by using the pretextual framework. We thus hold that a plaintiff can present both mixed-motive and pretext claims to the jury, and reject VECO's argument that Rosebrock had a forbidden "second bite at the apple."

4. *Did the superior court err in denying VECO's motions for JNOV and for a new trial on Rosebrock's wrongful termination claim?*

VECO claims that Rosebrock failed to offer evidence which would prove the elements of her wrongful termination claim. Specifically, VECO argues that Rosebrock failed to establish a prima facie case of retaliation because she failed to show: (1) that she engaged in a protected activity; (2) that an adverse employment decision was made; and (3) that there was a causal connection between the two.

■ First, Rosebrock testified that she complained to a supervisor, Bobby Clark, that she was sexually assaulted by another VECO employee.[31] VECO offers no support for the proposition that VECO would have been justified for terminating her for com-

plaining about such an assault. Nor does VECO claim or offer any support for the proposition that such a report was not a protected activity. Therefore, Rosebrock offered sufficient evidence to demonstrate that she engaged in a protected activity.

■ Second, VECO claims that it did not take adverse employment action against Rosebrock. However, Rosebrock was laid off. Therefore, there is no real dispute that VECO made an adverse employment decision against Rosebrock.

■ Finally, VECO claims that there was no causal connection between Rosebrock's complaint and her termination, and that Rosebrock was laid off as part of a general reduction in force because she was a junior office worker. However, Rosebrock testified that, following her termination, she spoke to a VECO employee who told her that VECO had "taken care of the problem" because "you're gone." Also, Rosebrock was laid off about six days after she complained, which in context of Rosebrock's "you're gone" testimony, is inferential evidence of a causal connection. *See Miller,* 797 F.2d at 731 (stating that causation can be proved by inference from a close proximity in time between the protected activity and the allegedly retaliatory discharge); *see also* Mack A. Player, *Employment Discrimination Law* § 5.48, at 404 n. 284 (1988).

Reviewing this evidence in the light most favorable to Rosebrock, we find that the jury could reasonably have found that Rosebrock's complaint about the sexual assault was a cause of her termination. We thus affirm the superior court's denial of VECO's motions for JNOV and a new trial as to Rosebrock's wrongful termination claim.

C. *Punitive Damages*

1. *Are punitive damages authorized under AS 18.80.220 and AS 22.10.020(i)?*[32]

■ VECO claims that Rosebrock cannot recover punitive damages under Alaska's

---

**31.** Bobby Clark served as the alternate equipment manager when Rick Rorick was away from the North Slope.

**32.** Statutory interpretation is a question of law which this court reviews using its independent

judgment. *See Huf v. Arctic Alaska Drilling Co.,* 890 P.2d 579, 580 n. 2 (Alaska 1995).

922

anti-discrimination statute, AS 18.80.220. However, in *Loomis Electronic Protection, Inc. v. Schaefer,* 549 P.2d 1341, 1343 (Alaska 1976), this court stated that plaintiffs may recover punitive damages under AS 18.80. We stated that

> the broad language of AS 22.10.020(c) indicates a legislative intent to authorize an award of compensatory and punitive damages for violations of AS 18.80, in addition to the equitable remedies such as enjoining illegal employment activities and ordering back pay as a form of restitution.[33]

*Id.; see also Johnson v. Alaska State Dept. of Fish & Game,* 836 P.2d 896, 906 (Alaska 1991) (citing *Loomis* for the proposition that AS 22.10.020(c) authorizes punitive damages for violations of AS 18.80, but holding that the statute did not specifically allow punitive damages against the state).

Nevertheless, VECO claims that this court's statements in *Loomis* and *Johnson* were merely dicta, and that we should reconsider the question of punitive damages. Specifically, VECO claims that the issue in *Loomis* concerned whether a prospective employee was entitled to a jury trial, and that the language regarding punitive damages is therefore superfluous. It also argues that in *Johnson,* we simply assumed that punitive damages were recoverable, but never decided the propriety of such damages.

While VECO accurately summarizes the question presented in *Loomis,* we think that VECO is incorrect in claiming that the punitive damage reference is mere dicta. Dicta is defined as "[o]pinions of a judge which do not embody the resolution or determination of the specific case before the court. Expressions in court's opinion which go beyond the facts before court and therefore are individual views of author of opinion and not binding in subsequent cases as legal precedent." *Black's Law Dictionary* 454 (6th ed.1990). In *Loomis,* this court's discussion of the relief afforded by Alaska's civil rights statute was necessary for our holding that the prospective employee was entitled to a

jury trial. *See* 549 P.2d at 1343. The language was not superfluous to the "specific case before the court," and did not "go beyond the facts." Similarly, in *Johnson,* we necessarily accepted the holding in *Loomis* that punitive damages were recoverable pursuant to AS 18.80 before reaching the issue of whether punitive damages could be assessed against the state. *See* 836 P.2d at 906.

██ The plain language of AS 22.10.020(i) authorizes the superior court to award "any other relief, including the payment of money." Further, in a consistent line of decisions, this court has held that punitive damages are recoverable in discrimination cases. *See Loomis,* 549 P.2d at 1343; *Johnson,* 836 P.2d at 906; *cf. McDaniel v. Cory,* 631 P.2d 82, 87 (Alaska 1981) (affirming holding in *Loomis* that punitive damages are available in civil action, but distinguishing administrative action where punitive damages are not available). Moreover, under the common law, Alaska's superior courts possess the authority to award punitive damages for outrageous conduct. *See Bridges v. Alaska Hous. Auth.,* 375 P.2d 696, 702 (Alaska 1962). Allowing punitive damages under AS 18.80.220 does not reach beyond settled expectations. We therefore follow our prior holdings that punitive damages are authorized under AS 18.80.220 and AS 22.10.020(i).

2. *Did the jury instructions err in permitting the jury to award punitive damages against VECO for acts of a supervisor beyond the scope of the supervisor's employment?*

VECO claims that the superior court's instruction on punitive damages was erroneous because it allowed the jury to award punitive damages based on vicarious liability. Citing Restatement (Second) of Agency § 217C (1958), it argues that this court should apply agency principles to limit the award of punitive damages to instances where the employer has committed a wrong.

---

**33.** AS 22.10.020(c) was subsequently codified as AS 22.10.020(i). It provides in relevant part: The [superior] court may enjoin any act, practice, or policy which is illegal under AS 18.80.

and may order any other relief, including the payment of money, that is appropriate.

The jury instructions allowed the jury to award punitive damages against VECO based on four different theories of employer liability: (1) wrongfully terminating Rosebrock; (2) sexual harassment by an employee acting within the scope of his employment if VECO knew about the harassment and failed to take corrective action; (3) sexual harassment by a co-worker or supervisor who did not have authority over Rosebrock, if Rosebrock's supervisor knew about the harassment and failed to take corrective action; and (4) vicarious liability for sexual harassment by Rosebrock's supervisor, unlimited by the scope of the supervisor's employment.

The jury found that VECO was liable for both wrongful termination and sexual harassment and awarded punitive damages. No special verdict answer specified whether punitive damages were awarded for the wrongful termination or the sexual harassment claims, or for both. Thus, it is possible that the jury's award of punitive damages could have been based solely on VECO's vicarious liability for actions of Rorick outside the scope of his employment.

 We must now determine whether an employer can be liable for punitive damages based solely on vicarious liability for its employees' actions outside the scope of their employment.[34]

Restatement (Second) of Agency § 217C provides:

Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:

(a) the principal authorized the doing and the manner of the act, or

(b) the agent was unfit and the principal was reckless in employing him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the principal or a managerial agent of the principal ratified or approved the act.

The comments to section 909 of the Restatement (Second) of Torts, which is identical to section 217C of the Restatement (Second) of Agency, provide:

The rule stated in this Section results from the reasons for awarding punitive damages, which make it improper ordinarily to award punitive damages against one who himself is personally innocent and therefore liable only vicariously. It is, however, within the general spirit of the rule to make liable an employer who has recklessly employed or retained a servant or employee.... Nor is it unjust that a person on whose account another has acted should be responsible for an outrageous act for which he otherwise would not be if, with full knowledge of the act and the way in which it was done, he ratifies it, or, in cases in which he would be liable for the act but not subject to punitive damages, he expresses approval of it. In these cases, punitive damages are granted primarily because of the principal's own wrongful conduct.

*Although there has been no fault on the part of a corporation or other employer, if a person acting in a managerial capacity either does an outrageous act or approves of the act by a subordinate, the imposition of punitive damages upon the employer serves as a deterrent to the employment of unfit persons for important positions.*

Restatement (Second) of Torts § 909 cmt. b (1979) (emphasis added) (illustrations omitted).

We generally agree with VECO that the Restatement properly balances the interests in imposing vicarious liability while precluding punitive damages when the employer has not acted wrongfully. Other courts which have used agency principles to impose vicari-

---

**34.** We have indicated that an employer is vicariously liable for punitive damages for acts of employees within the scope of their employment. *See Alaskan Village, Inc. v. Smalley,* 720 P.2d 945, 948–49 (Alaska 1986) (holding owner of mobile home park liable for punitive damages for acts of managers within the scope of their employment) (citing *Stroud v. Denny's Restaurant,* 271 Or. 430, 532 P.2d 790, 793 (Or.1975)); *cf. Murray v. Feight,* 741 P.2d 1148, 1158–59 (Alaska 1987) (holding defendant liable for punitive damages for act of partner in the ordinary course of partnership business). Our holding today concerns vicarious liability for acts of employees outside of the scope of their employment.

ous liability on an employer for its supervisor's hostile environment sexual harassment have also limited the employer's punitive damage liability based on the agency principles enunciated in § 217C of the Restatement (Second) of Agency. *See, e.g., Kelly–Zurian v. Wohl Shoe Co.*, 22 Cal.App.4th 397, 27 Cal.Rptr.2d 457, 468–69 (Cal.App.1994) (holding that employer is not liable for punitive damages based on supervisor's sexual harassment unless the employer acted wrongfully, as defined by Restatement (Second) of Torts § 909); *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 626 A.2d 445, 464 (N.J.1993) (applying agency principles to hold employer vicariously liable for supervisor's hostile environment sexual harassment, but limiting liability for punitive damages to situations of actual participation by upper management or willful indifference).

We have indicated that liability for punitive damages might be imposed in one situation where the Restatement would not impose them—where an employee who is not necessarily employed in a managerial capacity acts within the scope of his employment. *See Alaskan Village, Inc. v. Smalley*, 720 P.2d 945, 948–49 (Alaska 1986); *cf. Murray v. Feight*, 741 P.2d 1148, 1158–59 (Alaska 1987). We decline, however, to extend this exception and allow vicarious liability for punitive damages when the employee is acting outside the scope of his employment.[35]

■■■■ If an employee is acting outside the scope of his employment, he is not acting in any way to further the goals of the employer. *See* Restatement (Second) of Agency § 228(1)(c) (providing that employee is not acting within the scope of his employment unless his actions are "actuated, at least in part, by a purpose to serve the master").[36] The interest of preventing sexual harassment is served by holding an employer vicariously liable for its supervisors' sexual harassment, regardless of whether they are acting within the scope of their employment, because the employer may be deterred from delegating authority to untrained or incompetent supervisors. However, this does not mean that an innocent employer should be punished by an award of punitive damages when its supervisors are acting outside the scope of their employment. Punitive damages are disfavored and are allowed only within narrow limits. *See Chizmar v. Mackie*, 896 P.2d 196, 210 (Alaska 1995). The instructions given in this case went beyond those limits in permitting punitive damages to be awarded based on vicarious liability for acts of employees outside the scope of their employment.

■■■■ When a jury award may be based on any one of several theories, one of which has been erroneously submitted to the jury, a new trial is required. *See Matomco Oil Co. v. Arctic Mechanical, Inc.*, 796 P.2d 1336, 1343–44 (Alaska 1990). This rule applies here, for there is no means for determining

**35.** In *Smalley* we adopted the majority rule for an employer's vicarious liability for punitive damages, relying on *Stroud v. Denny's Restaurant, Inc.*, 271 Or. 430, 532 P.2d 790, 793 (Oregon 1975). The rule as expressed in *Stroud* requires that the employee be acting within the scope of his employment:

> [W]hen an employee commits a wrongful act which would subject him personally to punitive damages, the essential inquiry must be whether the act was committed while the employee was acting within the scope of his employment.... If the employee was acting within the scope of his employment, the corporation will be liable for punitive damages regardless of whether that employee may be classified as "menial."

**36.** In *Doe v. Samaritan Counseling Center*, 791 P.2d 344, 348 (Alaska 1990), we stated the "motivation to serve" test would be satisfied "where tortious conduct arises out of and is reasonably

incidental to the employee's legitimate work activities". To the extent that this language suggests that the employee's act need not be motivated in fact at least to some degree to serve the master's business we disapprove of it. Doe was a patient whose counselor had consensual sex with her. The question was whether the employer of the counselor could be vicariously liable for the abuse of the patient-counselor relationship. We held that there was a question of fact as to whether the counselor had acted within the scope of his employment. We did not mention the possibility of vicarious liability under an aided in agency theory like that contained in section 219(2)(d) of the Restatement (Second) of Agency which would be applicable regardless of scope of employment considerations. On reflection, vicarious liability under such a theory would seem to be justified. And imposing vicarious liability under a scope of employment theory absent at least a partial purpose on the part of the employee to serve the employer seems unjustified.

whether the punitive damage award was based on the direct liability theories which would support the award or on the vicarious liability theory which would not support the award.

### 3. Did VECO properly object to the punitive damage instruction?

Civil Rule 51(a) provides that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto ... stating distinctly the matter to which the party objects and the grounds of the objection." We now address whether VECO satisfied this rule with respect to punitive damages for vicarious liability.

■ The superior court gave a substantially similar instruction on punitive damages as that submitted by VECO.[37] This instruction did not inform the jury that it could not impose punitive damages based on vicarious liability for acts of supervisors beyond the scope of their employment. However, VECO objected to the instruction which stated that it could be held vicariously liable for the acts of its supervisors. VECO's counsel referred to its "running objection", referring to its prior arguments on this point.

VECO clearly asserted its position that it could not be vicariously liable for sexual harassment. But it did not state that this objection applied to punitive damages. In our view, such a statement was not necessary

in order to preserve its appellate rights. VECO's objection to vicarious liability was inclusive of all forms of damages. Liability for punitive damages was subsumed within its objection.

## IV. CONCLUSION

The judgment of the superior court is AFFIRMED as to compensatory damages, REVERSED as to punitive damages, and REMANDED for a new trial where the issues will be whether punitive damages should be assessed against VECO and, if so, the amount of such damages.[38]

COMPTON, Chief Justice, not participating.

---

37. Instruction No. 31 states:

Rosebrock has requested that you award a separate amount of money in order to punish VECO and to deter VECO and others from repeating similar acts. You may award such an amount of money only if you have decided that VECO is liable on one or more of Rosebrock's claims, and if you decide that VECO's conduct which forms the basis of your verdict was outrageous. VECO's conduct was outrageous if it was the result of maliciousness, bad motive, or was undertaken with a reckless indifference to Rosebrock's interests and rights.

Rosebrock must prove the outrageousness of VECO's conduct by clear and convincing evidence. An alleged fact is established by clear and convincing evidence if the evidence induces belief in your minds that the alleged fact is highly probable. It is not necessary that the alleged fact be certainly true or true beyond a reasonable doubt or conclusively true. However, it is not enough to show that the alleged fact is more likely than not true.

38. VECO has raised numerous evidentiary objections. We have reviewed each of them and find that the rulings complained of were either correct or, if erroneous, harmless in that they did not affect VECO's substantial rights. VECO also claims that Rosebrock's attorney violated professional standards in his closing argument. However, as no objection was made to this conduct, we regard it as waived. We have reviewed the conduct under a plain error standard and find that plain error does not exist. Finally, VECO claims that it was entitled to exercise a peremptory challenge to the trial judge under Civil Rule 42(c) after a co-defendant had already made a Rule 42(c) challenge. VECO argues that its interests were hostile to those of the co-defendant, but it did not make this argument below. We therefore consider the point to be waived.

Rosebrock's cross-appeal was based on a discovery sanction issue which was relevant only to proving liability for wrongful termination. Since we affirm the judgment of liability, we do not reach the cross-appeal.