Jon DERENDINGER, Plaintiff,

v.

**KIEWIT CONSTRUCTION COMPANY,**
Defendant.

No. A01–0204 CVC(JKS).

United States District Court,
D. Alaska.

July 8, 2003.

*ORDER*

SINGLETON, District Judge.

## INTRODUCTION

Presently before the Court are four motions brought by Defendant Kiewit Construction Company ("Kiewit"). First, Kiewit moves for summary judgment. Docket Nos. 56 (Mot.); 65 (Opp'n); 68 (Reply). Second, Kiewit moves to exclude all evidence of citations issued to Kiewit by the Alaska Department of Labor, Occupational Health and Safety Section. Docket Nos. 57 (Mot.); 62 (Opp'n); 67 (Reply). Third, Kiewit moves to exclude the Alaska Department of Labor, Occupational Safety and Health Section's investigative report. Docket Nos. 58 (Mot.); 62 (Opp'n); 69 (Reply). Lastly, Kiewit moves to limit Plaintiff Jon Derendinger to one expert witness. Docket Nos. 60 (Mot.); 63 (Opp'n); 70 (Reply).

## FACTUAL AND PROCEDURAL BACKGROUND

Jon Derendinger was employed as a miner and later as a foreman with Kiewit. Docket No. 22 at 2. During the summer and fall of 1999, Derendinger "was responsible for the ground support crew working

on the Whittier Tunnel Project and preparing the turn outs for the subcontractors." *Id.* "The ground support crew responsibilities included preparing an area for shot (blast), loading shot, blasting, mucking (cleaning up debris), and scaling rock from the work car and installing [a] ground support system." *Id.* To enlarge the tunnel, "Derendinger's crew would load the explosives into the holes, prepare the tunnel for a blast and under the supervision of the walking boss, Mike Levoy, the blast would be set off." *Id.* at 3. Derendinger alleges he warned Kiewit "about safety issues many times." *Id.* at 4. Specifically, Derendinger alleges that in July of 1999, he warned Kiewit supervisors, Mike Levoy, Mike Byers, Matt Roberts, and general superintendent Jeff Bool, "about the scaling procedures and the way the holes were being left loaded with explosives while passengers and freight trains used the tunnel." *Id.* Derendinger alleges that as a result of these warnings, he was harassed by Mike Levoy, Mike Byers, and Matt Roberts. *Id.*

"On September 13, 1999 at approximately 9:00 p.m., Derendinger's crew prepared the tunnel area for a shot and loaded holes with explosives." *Id.* "The shot was set off around 4:00 a.m. on September 14, 1999" and "[t]hereafter, Mike Levoy sent in a mucking crew to clear the area." *Id.* "At approximately 8:00 a.m. Mike Levoy sent Derendinger and his crew into the blast area to do hand scaling." *Id.* The complaint further alleges that Derendinger and his crew had only thirty minutes to scale the area because a train was scheduled to leave Whittier at approximately 9:00 a.m. *Id.* at 5. Derendinger and his crew did not finish scaling within the thirty minutes. *Id.* "Mike Levoy radioed the operator of the work car to get the crew out of the tunnel," but "Derendinger's crew continued to work because of all the loose rock in the blast area." *Id.* Due to the delay in making the tunnel safe, the train was late, which subjected Kiewit to a heavy fine. *Id.* at 5–6. Derendinger further alleges that after he exited the tunnel Levoy screamed at him. *Id.* at 6. At a safety meeting held soon thereafter, Derendinger alleges he temporarily left the meeting to get his clipboard and was reprimanded for leaving the meeting. *Id.* Derendinger returned to work that evening as scheduled, and Mike Levoy informed him that he was terminated. *Id.*

During his deposition, Derendinger testified as to performance problems at work prior to his termination. Specifically, Derendinger testified that he once walked within fifty feet of live explosives with a lit cigarette. Docket No. 56, Ex. 1 at 22. He also testified that he was verbally reprimanded four times for not turning in the keys to the explosives magazine. *Id.*, Ex. 1 at 23. Derendinger further testified that he was suspended once for three days for cutting a live cable. *Id.*, Ex. 1 at 24–25.

On April 30, 2001, Derendinger filed suit in Alaska Superior Court alleging retaliatory termination, interference with economic advantage, intentional/negligent infliction of emotional distress, and outrageous, malicious and reckless behavior by Kiewit. Docket No. 3, Ex. A (Compl.) at 7–8.[1] On July 3, 2001, Kiewit removed the case from Alaska Superior Court to this Court. Docket No. 1. In an order dated April 25, 2002, this Court dismissed Derendinger's stand-alone claims of negligent infliction of emotional distress and intentional infliction of emotional distress (Counts 3 and 4), as well as a number of Kiewit's affirmative defenses. Docket No.

---

1. Derendinger subsequently amended his complaint to include a fifth cause of action—conspiracy to interfere with contract and/or Plaintiff's economic opportunity. Docket No. 22 at 8.

42. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

## DISCUSSION

### I. Motion for Summary Judgment

Kiewit moves for summary judgment on Derendinger's remaining claims: (1) retaliatory discharge; (2) interference with prospective economic advantage; and (3) conspiracy to interfere with Derendinger's contract. Docket Nos. 56 (Mot.); 65 (Opp'n); 68 (Reply). In his opposition, Derendinger states that "[t]o the extent [Kiewit's] motion seeks dismissal with regard to the claims for interference with a prospective economic advantage, and civil conspiracy, the motion is not opposed." Docket No. 65 at 1. Since Derendinger concedes that Kiewit's motion in this regard is well taken, the Court will dismiss Count 2 (interference with a prospective economic advantage) and Count 5 (conspiracy) of Derendinger's amended complaint. Accordingly, Derendinger's sole remaining claim is for retaliatory discharge.

### A. Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, "[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may ... move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R.Civ.P. 56(a); *see also* Fed.R.Civ.P. 56(b) (providing the same standard for parties defending against a claim). Summary judgment is appropriate if the Court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Courts will construe all evidence and draw all evidentiary inferences in favor of the non-moving party. 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2727, at 459, 459 n. 5 (3d ed.1998) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

A dispute over a material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, mere allegations of factual dispute, without more, will not defeat an otherwise proper motion. *See Provenz v. Miller*, 102 F.3d 1478, 1489–90 (9th Cir.1996); *Angel v. Seattle–First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir.1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.").

### B. Prima Facie Case of Retaliatory Discharge

Kiewit moves for summary judgment on Derendinger's claim of retaliatory discharge on the theory that Derendinger cannot establish a prima facie case. In the alternative, if Derendinger can establish a prima facie case, Kiewit argues that Derendinger cannot produce evidence to show that Kiewit's explanation for Derending-

er's termination was pretext. The Alaska Supreme Court has provided a cause of action for retaliatory discharge on facts similar to this case, but it has not set out the evidentiary burdens imposed in such circumstances.

Specifically, the Alaska Supreme Court has held that discharging an employee for voicing safety concerns violates public policy and therefore breaches the implied covenant of good faith and fair dealing. *See Norcon, Inc. v. Kotowski*, 971 P.2d 158, 166–68 (Alaska 1999) (discharging employee for investigating violations of the zero tolerance, alcohol-free workplace policy violates the implied covenant of good faith and fair dealing); *Reed v. Municipality of Anchorage*, 782 P.2d 1155 (Alaska 1989) (discharging employee for complaining about potentially unsafe working conditions violates the implied covenant of good faith and fair dealing). Although the Alaska Supreme Court has not yet established an evidentiary framework in this situation, it has done so in retaliatory discharge cases brought pursuant to the Alaska Human Rights Act—which mirrors Title VII of the Civil Rights Act of 1964— where it has adopted the *McDonnell Douglas* burden-shifting analysis. *See Era Aviation, Inc. v. Lindfors*, 17 P.3d 40 (Alaska 2000); *VECO, Inc. v. Rosebrock*, 970 P.2d 906 (Alaska 1999); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Neither party disputes that the Alaska Supreme Court would also adopt the *McDonnell Douglas* analysis if confronted with the facts of this case. Accordingly, this Court will employ the *McDonnell Douglas* burden-shifting analysis in deciding Kiewit's motion for summary judgment.

To survive summary judgment, Derendinger must establish a prima facie case of retaliatory discharge. *Rosebrock*, 970 P.2d at 919. This requires that Derendinger provide evidence of the following: (1) he engaged in a protected activity; (2) Kiewit subjected him to an adverse employment action; and (3) there is a causal link between the protected activity and Kiewit's adverse employment action. *Id.* "[T]he amount [of evidence] that must be produced in order to create a prima facie case is 'very little.'" *Sischo–Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1111 (9th Cir.1991) (citation omitted). Once a prima facie case is established, the burden of production shifts to Kiewit to provide a legitimate business reason for the adverse employment action. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir.2002). Derendinger can rebut Kiewit's proffered legitimate reason with evidence of pretext. *Id.*

There are essentially two incidents of alleged protected activity in which Derendinger engaged. The first are his July 1999 safety complaints to general superintendent Jeff Bool. The second incident, in September 1999, involves Derendinger's refusal to quit scaling in the Whittier Tunnel despite a direct order to vacate the tunnel. With regard to the July 1999 incident, the parties do not dispute that Derendinger has satisfied the first two elements of a prima facie case, that is, that he engaged in a protected activity and was subjected to an adverse employment action. Rather, the parties dispute whether Derendinger has provided sufficient evidence of a causal link between the protected activity and his termination. With regard to the second incident, the parties dispute the first element of a prima facie case, that is, whether Derendinger engaged in a protected activity when he refused to quit scaling and vacate the tunnel.

### 1. July 1999 Safety Complaints

Here, the parties dispute whether Derendinger has provided sufficient evi-

dence of a causal link between the protected activity and his termination. Specifically, Kiewit contends that Derendinger has proffered no admissible evidence that Mike Levoy and Matt Roberts—the two supervisors who made the decision to discharge Derendinger—were even aware of his July 1999 complaints to Jeff Bool. Docket No. 56 at 17–18. "Causation sufficient to establish a prima facie case of unlawful retaliation may be inferred from the proximity in time between the protected action and the allegedly retaliatory discharge." *Rosebrock*, 970 P.2d at 919 (quoting *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir.1986)). Derendinger must prove, however, that Levoy and Roberts—who made the decision to terminate Derendinger—were aware that Derendinger made safety complaints to Jeff Bool, i.e., that Levoy and Roberts had knowledge of Derendinger's protected activity. "Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir.1998); *accord Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 755–56 (7th Cir.2000); *Holbrook v. Reno*, 196 F.3d 255, 263–64 (D.C.Cir.1999); *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197–98 (11th Cir.1997); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267–68 (5th Cir.1994); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993); *Talley v. United States Postal Serv.*, 720 F.2d 505, 508 (8th Cir.1983). "The defendant's awareness of the protected statement, however, may be established by circumstantial evidence." *Goldsmith*, 996 F.2d at 1163.

Derendinger testified at his deposition that in or about July of 1999 he raised safety concerns to Levoy, Roberts, and Byers regarding inadequate scaling and leaving live explosives in holes in the tunnel. Docket No. 56, Ex. 1 at 28–30. Dissatisfied with their response, Derendinger approached Jeff Bool with the same concerns. *Id.*, Ex. 1 at 29–30. After making his complaints to Bool, Derendinger asked that Bool keep confidential his identity as the complainant, which Derendinger believes he did. *Id.*, Ex. 1 at 31. Derendinger testified that after making his complaints to Bool, Kiewit began performing regular scaling and stopped leaving live explosives in the tunnel. *Id.*, Ex. 1 at 29–30. He further testified that after talking to Bool, Byers and Levoy began verbally harassing him and intimidating him by implying that he would lose his job if work assigned to him was not completed on time. *Id.*, Ex. 1 at 31. Derendinger personally witnessed Byers make a comment that "if we find out who talked to [Bool], they're in trouble." *Id.* Although Derendinger testified that he does not think that Bool revealed his identity as the complainant, or that Levoy, Roberts or Byers knew for certain who had talked to Bool, Derendinger speculates that the three suspected Derendinger given their harassment of him shortly after his talk with Bool. *Id.*, Ex. 1 at 31–32.

Although arguably a close call, the Court holds that Derendinger has produced the "very little" evidence necessary to establish a prima facie case. Derendinger testified at his deposition that he did not know for certain that Levoy and Roberts—who made the decision to terminate him—were aware of who made the safety complaints to Bool, but on balance what evidence Derendinger can produce is sufficient to shift the burden of production to Kiewit. Specifically, Derendinger can testify that in or about July of 1999, he approached Levoy, Roberts, and Byers with his concerns regarding inadequate scaling and leaving live explosives in the tunnel. Derendinger can testify as to

their response to him regarding these complaints and, dissatisfied with their response, that he subsequently brought the same complaints to Bool. Derendinger can further testify that Bool reported back to Derendinger that he looked into Derendinger's complaints. He can also testify that thereafter, Kiewit's practices with regard to scaling and the explosives changed and that he began to be harassed and intimidated by Byers and Levoy. Moreover, all these events took place approximately two months before Derendinger was terminated. Cumulatively, this testimony is sufficient to make an inference that there is a causal link between the protected activity and the adverse employment action. Accordingly, the burden of production shifts to Kiewit to produce a legitimate business reason for discharging Derendinger.

### 2. September 1999 Incident

██ Kiewit also contends that Derendinger cannot establish a prima facie case based on the September 1999 incident. During the evening of September 13, 1999, Derendinger and his crew prepared the tunnel for a shot and loaded holes with explosives. Docket No. 22 at 4. After the shot was set-off, Levoy sent in a mucking crew to clear the area. *Id.* Levoy later sent in Derendinger's crew to do hand scaling. *Id.* at 5. Derendinger's complaint alleges that he and his crew had only thirty minutes to scale the area because a train was scheduled to pass through the tunnel at approximately 9:00 a.m. *Id.* Derendinger and his crew did not finish scaling within the thirty minutes. *Id.* Levoy radioed the operator of the work car and ordered Derendinger's crew out of the tunnel, but the "crew continued to work because of all the loose rock in the blast area." *Id.* Due to the delay in making the tunnel safe, the train was late, which subjected Kiewit to a heavy fine. *Id.* Derendinger contends that after he exited the

tunnel, Levoy screamed at him. *Id.* at 6. At a safety meeting held soon thereafter, Derendinger alleges he temporarily left the meeting to get his clipboard and was reprimanded for leaving the meeting. *Id.* Derendinger returned to work that evening as scheduled, and Levoy informed him that he was terminated. *Id.*

Kiewit relies on Alaska Statute 18.60.089, and the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–678, to support its argument that Derendinger is not permitted under either statute, or the implementing regulations, to unilaterally remedy what he perceived to be a safety problem. Both statutes contain provisions that protect employees from retaliation due to their assertion of rights under either statute. Regulations promulgated for the Occupational Safety and Health Act provide that an employee who has (1) filed a complaint under the Act, (2) instituted or caused to be instituted a proceeding under the Act, (3) testified or will be testify in a proceeding under the Act, or (4) exercised any other right under the Act shall be free from discrimination or termination for participating in any of these actions. 29 C.F.R. § 1977.3 (2003). The regulations further provide that "there is no right afforded by the Act which would entitle employees to walk off the job because of potential unsafe conditions at the workplace. Hazardous conditions which may be violative of the Act will ordinarily be corrected by the employer, once brought to his attention." *Id.* § 1977.12(b)(1). However, if "an employee is confronted with a choice between not performing assigned tasks or subjecting himself to serious injury or death arising from a hazardous condition at the workplace," then the employee may "refuse[ ] in good faith to expose himself to the dangerous condition" if there is no reasonable alternative. *Id.* § 1977.12(b)(2). The hazardous condition placing the employee in

apprehension of death or injury must be of such nature that a reasonable person, under the circumstances then confronting the employee, would conclude that there is a real danger of death or serious injury and that there is insufficient time, due to the urgency of the situation, to eliminate the danger through resort to regular statutory enforcement channels. *Id.* In *Whirlpool Corp. v. Marshall,* 445 U.S. 1, 100 S.Ct. 883, 63 L.Ed.2d 154 (1980), a case on which Kiewit relies, the United States Supreme Court held that 29 C.F.R. § 1977.12 "simply permits private employees of a private employer to avoid workplace conditions that they believe pose grave dangers to their own safety. The employees have no power under the regulation to order their employer to correct the hazardous condition or to clear the dangerous workplace of others." 445 U.S. at 21, 100 S.Ct. 883.

Though not directly on point with the facts in this case, Kiewit relies on these citations to support its argument that neither Alaska law nor federal law permit Derendinger to have acted unilaterally to remedy what he perceived to be a safety risk. Docket No. 56 at 21. In Kiewit's view, allowing employees to do so would lead to workplace anarchy. Kiewit contends that Derendinger was required to vacate the tunnel as ordered and should have made an effort to correct the perceived safety risk by first approaching his employer, rather than disobeying a direct order and remaining in the tunnel to continue hand scaling. *Id.* Kiewit asserts that Derendinger could have refused to work and, if he satisfied other conditions, his refusal would have been protected. *Id.* at 21–22, 100 S.Ct. 883. Kiewit further contends that even if Derendinger refused to quit scaling because he was in apprehension for the safety of himself or others that his insubordination would not be a protected activity. *Id.* at 22, 100 S.Ct. 883.

Derendinger argues that the authority upon which Kiewit relies either is not applicable or mandates the conclusion that material facts are in dispute. Docket No. 65 at 8. Derendinger argues that 29 C.F.R. § 1977.3 is not applicable because he did not walk off the job or refuse to work in order to effect safety policy changes. *Id.* at 9, 100 S.Ct. 883. Rather, Derendinger contends that he "employed his expertise as a certified blaster, and experienced miner to determine that additional scaling was necessary before a trainload of passengers and other Kiewit crewmembers should be allowed to pass through the tunnel." *Id.* He further argues that the exception to the rule expressed in 29 C.F.R. § 1977.12(b) would apply in this instance because Derendinger had no alternative but to continue hand scaling since there was insufficient time to alleviate the safety risk through resort to other remedies. *Id.* at 9–10, 100 S.Ct. 883. Derendinger contends that because there are two different version of events that this precludes summary judgment in either parties' favor.

The Court finds Kiewit's arguments persuasive. Although the state and federal statutes and implementing regulations cited by Kiewit are not directly on point, the idea expressed in these provisions is that a private employee cannot unilaterally alleviate what he perceives as a safety risk unless faced with death or serious injury to himself or others and there is no reasonable alternative. This was not the circumstance confronting Derendinger. Derendinger states in his opposition to the motion for summary judgment that he was aware of past instances where inadequate scaling resulted in rocks coming loose and damaging train cars. Docket No. 65 at 8. As a result of the damage, Jack Burton, a track inspector for the Alaska Railroad, had complained to Kiewit management and Kiewit then increased its hand scaling operations. *Id.* Derendinger does not per-

suasively contend in either his amended complaint or in his opposition pleading that his decision to ignore the order to vacate the tunnel was because he was in apprehension of death or serious injury to himself or others. Derendinger asserts that he had no alternative but to continue hand scaling because "there was insufficient time to eliminate the danger through resort to regular statutory enforcement channels," but this was not reasonable. If Derendinger was fearful that inadequate scaling was going to harm a train car or people on the train, a reasonable alternative would have been for Derendinger to inform one of his supervisors before the train passed through the tunnel. Instead, Derendinger ignored an order to vacate the tunnel and did not inform a supervisor of his motives for disobeying the order. This is not a protected activity. Accordingly, the Court finds that, with regard to only the September 1999 incident, Derendinger has not established a prima facie case of retaliatory discharge. Because the Court found that Derendinger has established a prima facie case of retaliatory discharge with regard to the July 1999 safety complaints, the Court will now consider whether Kiewit's reasons for terminating Derendinger are a pretext for retaliation.

### C. Pretext

■■■■■ Kiewit argues that even if Derendinger has established a prima facie case of retaliatory discharge, there is no evidence that Kiewit's reasons for terminating Derendinger are a pretext for retaliation.

Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory explanation for the action. To satisfy this burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employ-

ment decision had not been motivated by discriminatory animus. If the employer successfully rebuts the inference of retaliation that arises from establishment of a prima facie case, then the burden shifts once again to the plaintiff to show that the defendant's proffered explanation is merely a pretext for discrimination.

*Rosebrock,* 970 P.2d at 919 (quoting *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 731 (9th Cir.1986)). The Ninth Circuit Court of Appeals has provided a framework for analyzing pretext that this Court believes the Alaska Supreme Court would find persuasive. *See, e.g., Marcy v. Delta Airlines,* 166 F.3d 1279, 1282 (9th Cir.1999) ("This court must interpret and apply [state] law as it believes the [state] Supreme Court would apply it."). Pretext can be established by either direct or circumstantial evidence. *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1221–22 (9th Cir.1998). The standard of proof varies with the nature of the evidence. *Id.* at 1221. Very little direct evidence of pretext is required for the plaintiff to create a genuine issue of material fact and thus avoid summary judgment. *Id.* at 1221; *see also Bergene v. Salt River Project Agric. Improvement & Power Dist.,* 272 F.3d 1136, 1142 (9th Cir.2001). By contrast, if circumstantial evidence rather than direct evidence is provided to establish pretext it must be specific and substantial for the plaintiff to survive summary judgment. *Bergene,* 272 F.3d at 1142. Circumstantial evidence, also referred to as indirect evidence, tends to show that the employer's proffered legitimate business reason "is unworthy of credence because it is internally inconsistent or otherwise not believable." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.,* 225 F.3d 1115, 1127 (9th Cir.2000) (quotation marks omitted). Whereas direct evidence tends to show that the employer was more likely

motivated by retaliation than the employer's proffered reasons. *See id.*

Here, Derendinger has provided only circumstantial evidence of pretext. According to Derendinger's amended complaint, when he was discharged, Levoy told Derendinger "that his services were no longer needed." Docket No. 22 at 7. Derendinger refutes Kiewit's representation that he was terminated for performance problems because Kiewit did not offer that as a justification until after Derendinger made complaints to the State Department of Labor. Docket No. 65 at 6. Derendinger further contends that he had already been disciplined for his past performance problems and asserts that Kiewit should not be permitted to rely "on a collection of stale excuses" as *ex post facto* justifications for termination. *Id.* at 7.

 Derendinger's evidence is circumstantial rather than direct. The inference taken in the light most favorable to Derendinger from the timing of his protected activity—his July 1999 safety complaints to Jeff Bool—and his termination in September 1999 is that Kiewit relied, at least in part, on previous events for which Derendinger had been disciplined, in addition to the September 1999 incidents, wherein Derendinger disobeyed a direct order to vacate the tunnel and, later that same day, left a safety meeting despite direction not to do so. The timing and content of Derendinger's safety complaints to Bool and his termination support a prima facie case of retaliatory discharge but it is not enough by itself to avoid summary judgment on the issue of pretext. *See Rosebrock*, 970 P.2d at 919 (holding that "[c]ausation sufficient to establish a prima facie case of unlawful retaliation may be inferred from the proximity in time between the protected action and the allegedly retaliatory discharge"); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) (same); *cf. Knickerbocker v. City of Stockton*, 81 F.3d 907, 912 (9th Cir.1996) ("Although adverse action following close on the heels of protected activity can support an inference of retaliation, such an inference is not compelled where other evidence provides a reasonable basis for inferring that adverse action was not retaliatory.") (citation omitted). The Ninth Circuit has held "that a plaintiff at the pretext stage must produce evidence in addition to that which was sufficient for [his] prima facie case in order to rebut the defendant's showing." *Godwin*, 150 F.3d at 1220. Derendinger has failed to do this.

Derendinger argues that problems with his performance were not asserted by Kiewit until after Derendinger complained to the State Department of Labor, as well as in its pleadings in this Court. It appears that Derendinger would like the Court to conclude that these reasons are inconsistent with the reason Levoy gave at the time of Derendinger's discharge; that Derendinger's services were no longer needed. If the statements were in fact inconsistent, they would indeed establish pretext sufficient to survive summary judgment. *See, e.g., Godwin*, 150 F.3d at 1222. Where there is specific and substantial evidence that the "proffered motives were not the actual motives because they are inconsistent or otherwise not believable," pretext is established sufficient to avoid summary judgment. *See id.* These statements are not, however, inconsistent with the reason given at the time of Derendinger's firing. Indeed, the reason given at the time of his discharge—"that his services were no longer needed"—is simply a less direct way of saying, "You're fired."

Nor are the reasons given by Kiewit for Derendinger's termination not credible. Derendinger admitted in his deposition that he once walked within fifty feet of lives explosives with a lit cigarette. Dock-

et No. 56, Ex. 1 at 22. He admitted that he left the work site with keys to the explosives magazines on four occasions. *Id.*, Ex. 1 at 23. He admitted that he was once suspended for three days for cutting a live cable. *Id.*, Ex. 1 at 24–25. He admitted that he had been ordered to vacate the tunnel on September 13, 1999, and, despite a direct order to do so, did not vacate. Docket No. 22 at 5. And he admitted that he left a safety meeting to fetch his clipboard after he had been told not to do so. *Id.* at 6. Derendinger's testimony does not rebut Kiewit's legitimate business reason for discharging Derendinger. Derendinger has failed to establish with specific and substantial circumstantial evidence that Kiewit's legitimate business reason for firing him was a pretext for retaliation for Derendinger's safety complaints. Accordingly, the Court will grant Kiewit's motion for summary judgment at Docket No. 56.

## II. Kiewit's Remaining Motions

Kiewit also moves to exclude all evidence of citations issued to Kiewit by the Alaska Department of Labor, Occupational Health and Safety Section. Docket Nos. 57 (Mot.); 62 (Opp'n); 67 (Reply). Kiewit also moves to exclude the Alaska Department of Labor, Occupational Safety and Health Section's investigative report. Docket Nos. 58 (Mot.); 62 (Opp'n); 69 (Reply). Lastly, Kiewit moves to limit Derendinger to one expert witness. Docket Nos. 60 (Mot.); 63 (Opp'n); 70 (Reply). Because the Court will grant Kiewit's motion for summary judgment, Kiewit's remaining motions will be denied as moot.

**IT IS THEREFORE ORDERED:**

Kiewit's motion for summary judgment at Docket No. 56 is **GRANTED**. Kiewit's remaining motions at Docket Nos. 57, 58 and 60 are **DENIED AS MOOT**. The Clerk of Court shall enter judgment in favor of Kiewit.